**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edward J. BROTHERS, Defendant–Appellant.**

**No. 89–3524.**

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1991.

Decided Jan. 30, 1992.

Mark D. Stuaan, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Alan M. Freedman (argued), Freedman & Bornstein, Chicago, Ill., Thomas E. Hastings, Indianapolis, Ind., for defendant-appellant.

Before POSNER, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Defendant-appellant Edward J. Brothers was indicted on May 31, 1989, on three counts of fraudulently obtaining disability benefit checks from the United States in violation of 18 U.S.C. § 1341, and three counts of making false and fictitious statements to the United States Department of Labor in violation of 18 U.S.C. § 1001. The indictment alleged that Brothers engaged in a scheme to defraud the United States from December 1972, to March 25, 1987.

On September 6, 1989, a jury found Brothers guilty on all counts. He was sentenced on November 9, 1989. Brothers challenges his conviction and the restitution order imposed by the district court during sentencing. He argues that the district court erred in failing to give a limiting instruction to the jury and that the restitution order exceeded the scope of his convictions and was impermissibly vague. We affirm his conviction but remand the resti-

tution order for clarification of the exact amount of restitution.

The Department of Labor, Division of Office and Workers' Compensation Program ("OWCP") administers the Federal Workers' Compensation Act which covers federal civilian employees injured on the job. When a federal employee is found to be totally disabled he will receive a monthly check by mail based on pay rate and number of dependents. For a long-term total disability, OWCP will send an award letter to the claimant indicating that the monthly check will continue until the recipient notifies OWCP of a dependent change, a medical change, or the employee returns to work.

The employee is under the obligation to inform OWCP of any of those changes in his status. OWCP also sends to recipients of benefits periodic update questionnaires, which are referred to as 1032 forms. A claimant is obligated to complete the 1032 forms indicating any changes in his eligibility—especially changes in his income. The 1032 form is sent at irregular intervals to long-term total disability claimants. The 1032 form usually covers the twelve to fifteen month period preceding the date of the claimant's signature. If a claimant reports income, OWCP adjusts his compensation to reflect that income on a dollar for dollar basis. If a claimant submits a false 1032 statement he forfeits the entire disability benefit even if he would have been entitled to a reduced benefit if he had submitted an accurate 1032 form.

In 1966, Brothers became a postal worker for the United States Government. In 1969, while employed by the Postal Service, Brothers received a disabling back injury. In approximately July 1970, he received an award letter from OWCP notifying him that he was totally disabled. Thereafter, Brothers received through the mail a monthly check from OWCP.

After 1970, Brothers was apparently not totally disabled. In 1974, while receiving disability benefits from OWCP, he was employed by West Bogs Park in Davies County, Indiana. During 1979 and 1980, Brothers was employed by Lost River Manufac-turing—first as a truck driver and then in the sales department. After he left Lost River Manufacturing, Brothers earned income from Investor Trust Assurance and from American United Life. In 1984, He worked at two car dealerships in Lafayette, Indiana: Bill Andrews Oldsmobile, and Twin City Dodge. In 1986 and 1987, Brothers received income from Layman National Life Insurance. During those years he was also a director of the American Retirees Trust.

During the period from 1972 to 1987 Brothers did not inform OWCP in a 1032 form of any employment or earned income. When he did earn income, Brothers used the name Joseph Edward Brothers and a different Social Security number. At trial, a representative of the Department of Labor testified that Brothers was overpaid in the amount of approximately $67,000.00 as a result of his fraudulent activities. At no time did Brothers object to the accuracy of the Department's calculation.

After the jury convicted Brothers on all counts, the district court sentenced him to four years imprisonment and five years probation to run consecutively to the prison term. The district court imposed a condition on Brother's probation, that "the defendant make restitution to the United States Department of Labor to the extent he is able to do so as monitored by his probation officer." During the sentencing hearing the court accepted the Department of Labor's estimate that defendant had received approximately $67,000.00 as a result of his fraudulent activity. The court further noted that it accepted the government's recommendation concerning the appropriate sentence. The government's recommendation, however, required Brothers to reimburse the Department of Labor in the amount of approximately $70,000.00 as a specific condition of his probation to follow the executed sentence. The judgment and conviction order requires Brothers to "enter into an agreement with the United States Department of Labor for monthly payments on the overpayment, interest and penalties due as directed by the U.S. Probation Office."

■ Brothers' first contention on appeal is that the district court's failure to give a limiting instruction tendered by the government was reversible error. At trial, the government introduced evidence that since 1972 he improperly received OWCP checks and made false and fraudulent statements. Brothers argues that this evidence of his other crimes was outside the scope of the indictment but concedes that the evidence was relevant and admissible to demonstrate his motive and intent. *See* FED. R.EVID. 404(b). At trial Brothers did not dispute that he received the checks and made false statements, but only argued that he lacked the requisite intent to commit fraud.

■ Brothers insists that the district court should have instructed the jury that the evidence of his other crimes was admissible only for the purpose of demonstrating his motive and intent. Brothers maintains that because the amount of additional evidence of his other crimes was substantial, his case especially merited a limiting instruction. Brothers did not object to the district court's failure to give a limiting instruction. The government did tender a limiting instruction, but the trial court did not give that instruction to the jury. Because Brothers failed to object to the court's charge to the jury, he has waived this objection. FED.R.CRIM.P. 30; *United States v. Jackson,* 569 F.2d 1003, 1008–09 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978); *United States v. Hyman,* 741 F.2d 906, 911 (7th Cir.1984). Thus, we review his argument under a plain error standard. FED. R.CRIM.P. 52(b); *United States v. Holt,* 817 F.2d 1264, 1274 (7th Cir.1987); *United States v. Requarth,* 847 F.2d 1249, 1254 (7th Cir.1988).

■ It is well settled that "[a] reversal on the basis of plain error can be justified 'only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice.' " *Id.* at 1254 (quoting *United States v. Silverstein,* 732

F.2d 1338, 1349 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985)). " 'In deciding whether a defect in a jury instruction is "plain error," we must examine the entire record before us, and determine whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' " *United States v. Torres,* 733 F.2d 449, 458 (7th Cir.), *cert. denied,* 469 U.S. 864, 105 S.Ct. 204, 83 L.Ed.2d 135 (1984) (quoting *Jackson,* 569 F.2d at 1010).

We cannot agree with Brothers that the trial court's failure to give the government's proposed limiting instruction was plain error. All of the evidence covered by the proposed limiting instruction tended to prove that Brothers intended to carry out the alleged fraud scheme to defraud the United States. Thus, the evidence posed little danger of unfair prejudice to Brothers. Moreover, as the district court recognized, the evidence not covered by the proposed instruction against Brothers was itself overwhelming. We conclude that the district court's failure to give the proposed 404(b) limiting instruction did not impact upon the jury's finding of guilty. There was no plain error. *See United States v. Price,* 617 F.2d 455, 459–60 (7th Cir.1979) (holding that the district court was not required to give, *sua sponte,* a 404(b) limiting instruction where it was not requested by defense counsel).

■ Brothers next argues that the restitution order of the district court exceeded the scope of his convictions for mail fraud and thus violates the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3663, 3664.[1] Brothers notes correctly that the Supreme Court in *Hughey v. United States,* 495 U.S. 411, 420, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990) held that the act requires a restitution order to be limited to "the loss caused by the conduct underlying the offense of conviction." He argues, that the district court had authority only to require him to make restitution for the three checks he was convicted of

---

1. The act was amended after Brothers was sentenced by the Crime Control Act of 1990. The amendments took effect on November 29, 1990.

improperly receiving from the United States in counts one through three.

Brothers is incorrect. He fails to note that the indictment alleged a mail fraud scheme from 1972 until 1987 to defraud the United States. The district court had the authority to order restitution for the losses caused by the entire fraud scheme, not merely for the losses caused by the specific acts of fraud proved by the government at trial. See United States v. Bennett, 943 F.2d 738, 741 (7th Cir.1991). In Bennett, the defendant pleaded guilty to two counts of mail fraud. Bennett agreed as a part of the plea agreement that the court could impose restitution with respect to eighty other acts of mail fraud. Pursuant to the agreement, the district court ordered restitution for the loss caused by the more than eighty fraudulent acts discussed in the plea agreement rather than the loss caused by the two specific offenses of conviction. Id. at 739. We affirmed the restitution order because "[p]roof of a scheme is an element of the offense of mail fraud, and therefore, actions pursuant to that scheme should be considered 'conduct that is the basis of the offense of conviction.'" Id. at 740 (quoting Hughey, 495 U.S. at 413, 110 S.Ct. at 1981).[2] We also admonished that: "The scheme concept is by its nature an amorphous one, and may only support an award of restitution if it is defined with specificity. A contrary rule would allow vague allegations of a scheme to support restitution based upon broad, unsubstantiated conduct." Id. at 741. Because Brothers was indicted and convicted for engaging in a scheme to defraud the United States, Bennett applies and the restitution ordered does not exceed the scope of his convictions.[3] See also United States v. Braslawsky, 951 F.2d 149 (7th Cir.1991) (holding that under § 3663 the defendant's sentence

of restitution for interstate transportation of stolen property was limited to the damages caused by the crime of conviction).

We conclude that the fraud scheme alleged in the indictment is defined with adequate specificity. The indictment defines the exact period of Brothers' violations and the methods he used. As we stated earlier, the jury must have believed that the indictment was entirely accurate because it convicted Brothers on all counts. This confirms our view that the indictment "specifically defined" the fraud scheme in this case. Bennett, 943 F.2d at 741. There is thus no risk that the restitution order was "based upon broad, unsubstantiated conduct." Id.

■ Brothers also argues that the restitution order is impermissibly vague under 18 U.S.C. §§ 3663 and 3664 because it allows the probation department to determine the amount of restitution. Because Brothers failed to raise this objection in the district court, we review only for plain error. United States v. Gomer, 764 F.2d 1221, 1224 (7th Cir.1985). Although the restitution order does not specify the exact amount of restitution, the order, the transcript of the trial, and that of the sentencing hearing, indicate that the restitution ordered is approximately $67,000. Brothers did not object below and does not now contest that $67,000 is the appropriate amount of restitution. Moreover, contrary to Brothers' argument, the restitution order does not leave the probation department to determine the appropriate restitution. See United States v. Mahoney, 859 F.2d 47, 51–52 (7th Cir.1988); Bennett, 943 F.2d at 741. Therefore, we conclude that the sentence of restitution is not impermissibly vague.

---

**2.** Section 3663(a)(3), as amended by the Crime Control Act of 1990, is consistent with the holding of *Bennett.* That section provides that: "The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."

**3.** We note that, as amended, § 3663(a)(2) would compel the same result as *Bennett.* That section provides that:

For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern.

See also United States v. Arnold, 947 F.2d 1236 (5th Cir.1991).

Nevertheless, the restitution order is incorrect because it orders an approximate amount of restitution. *See United States v. Lovett,* 811 F.2d 979, 990 (7th Cir.1987). We realize that because of a variety of factors it is sometimes difficult to determine the precise amount of restitution. However, in *Lovett,* we stated that: "the amount ordered to be paid in restitution as a condition of probation must be ascertained and delineated with an accurate computation and cannot be in excess of the loss actually caused and established, and must be clearly set out with specific findings and directions in the record and order of restitution." *Id.* (citing *United States v. Lynch,* 699 F.2d 839, 845 (7th Cir.1982).) The order must be remanded to the district court for a determination of the exact figure.

Therefore, we affirm Brothers' conviction and sentence but remand the restitution order to allow the district court to determine the exact amount of restitution.