**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary BENNETT, Defendant–Appellant.**

No. 90–3128.

United States Court of Appeals,
Seventh Circuit.

Argued March 5, 1991.

Decided Sept. 16, 1991.

John W. Vaudreuil (argued), Grant C. Johnson, Asst. U.S. Attys., Madison, Wis., for plaintiff-appellee.

Jeffrey Kassel (argued), Earl H. Munson, LaFollette & Sinykin, Madison, Wis., for defendant-appellant.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

This case arises from a scheme by Gary Bennett to defraud purchasers by rolling

back the odometers in the cars he sold to them. The odometers were altered to qualify the cars for Chrysler Corporation's extended warranty. As part of a plea agreement, Bennett pleaded guilty to two counts of mail fraud. The essence of those counts was that Bennett used the mail to transmit an Application for Title/Registration to two customers which reflected false and fraudulent information regarding the odometer reading of the automobiles sold to those customers. Although only two counts involving two particular vehicles were charged in the information, as part of the plea agreement Bennett agreed that the court could impose restitution with respect to more than eighty vehicles which were purchased from Gary Bennett Dodge, Incorporated. In addition to a period of incarceration, the court ordered restitution in the amount of $137,000.00. That figure was based upon the more than eighty vehicles discussed in the plea agreement. While on probation, Bennett became unable to continue the $500.00–per–month restitution payments, and his probation was revoked.

The Supreme Court subsequently issued its decision in *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), in which it held that restitution under the Victim Witness and Protection Act of 1982, 18 U.S.C. §§ 3579, 3580 (1982 ed. and Supp. IV) ("VWPA"), can be awarded "only for the loss caused by the specific conduct that is the basis of the offense of conviction." 110 S.Ct. at 1981. Based upon that decision, Bennett filed a motion for reconsideration of his sentence, arguing that *Hughey* limits the restitution in his case to the loss caused by the two sales.

■ The district court denied the motion because it found *Hughey* inapplicable. First, the court found that the case was distinguishable because the defendant in *Hughey* was not informed at the time of the plea that he could be ordered to pay restitution for other thefts. In contrast, Bennett agreed to the restitution. The district court then declared that it had not imposed restitution under the VWPA, but rather had imposed it as part of the plea

agreement to which Bennett agreed. On appeal, the government does not maintain that the district court could impose restitution through the plea agreement alone without reference to the VWPA. The district court could not exceed the sentencing authority of the VWPA simply because the government and defendant entered into a non-binding plea agreement to that effect. The focus of the arguments on appeal, therefore, concerns the proper interpretation of the *Hughey* decision.

In *Hughey,* the defendant was charged with three counts of theft by a United States Postal Service employee and three counts of unauthorized use of credit cards. Hughey pleaded guilty to one count of unauthorized use of a credit card, and the remaining charges were dismissed. As part of the factual basis for the plea, the government introduced evidence that Hughey had stolen at least fifteen other credit cards. 110 S.Ct. at 1981. The sentencing court imposed restitution for losses incurred in the other credit card thefts as well as for the theft which formed the basis for the conviction. The Fifth Circuit affirmed, holding that "the VWPA permits a court to require restitution beyond that amount involved in the offense of conviction when there is a significant connection between the crime of conviction and similar actions justifying restitution." *United States v. Hughey,* 877 F.2d 1256, 1264 (5th Cir.1989). In reversing that decision, the Court relied on the express language of the VWPA, which provides that "a defendant convicted of an offense" may be ordered to "make restitution to any victim of such offense." 18 U.S.C. § 3579(a)(1) (1982 ed., Supp. IV); 110 S.Ct. at 1982; *see also* §§ 3579(b)(1), (2), and (3). According to the Court, that language limited restitution to losses caused by the specific conduct which formed the basis of the offense to which the defendant pleaded guilty, and not to other related offenses of which defendant had been charged. With that decision, the Supreme Court rejected the practice of many circuits to consider related conduct and charges in the restitution order. *See* 110 S.Ct. at 1982 n. 2 and cases cited therein.

The government argues that *Hughey* is distinguishable from the present case because the offense of conviction in this case required proof of a scheme. *Hughey* was charged with a number of single-count apparently unrelated incidents. Bennett, on the other hand, was charged with a mail fraud scheme occurring over a two-year period and involving over eighty vehicles. The government argues that when the defendant pleads to a scheme, then the defendant can be required to make restitution for the entire scheme. *See United States v. Marsh,* 741 F.Supp. 1361 (D.Minn.1990). This argument distinguishes cases involving an ongoing scheme to defraud from cases in which the defendant is charged with a number of isolated offenses. We recognized such a distinction in *United States v. Davies,* 683 F.2d 1052 (7th Cir. 1982), and must now determine the extent to which *Hughey* affects the validity of *Davies.*

▮▮▮ After *Hughey,* the appropriate focus is on the conduct that forms the basis for the offense. In order to obtain a conviction of mail fraud, the government must prove that the defendant was engaged in a "scheme to defraud." The scheme alleged in the information and plea in the present case demonstrated a pattern of conduct that resulted in the alteration of odometers on cars sold to customers between July 1982 and October 1984. The information also alleged two specific mailings to two customers that occurred in furtherance of that scheme. The question in this case is whether restitution is limited to the victims of the mailings, or whether any victims of the alleged scheme can be included. Because a scheme to defraud is an element of the offense of mail fraud, a conviction pursuant to that statute allows restitution for all victims of that scheme.[1] A district court addressing a similar fact situation reached this conclusion in *United States v. Marsh,* 741 F.Supp. 1361 (D.Minn.1990). Although the *Hughey* court rejected the

notion that the difficulties in multi-count indictments justified an expansive interpretation of the VWPA, we need not read into the VWPA a stricter requirement than the precise language would demand. Proof of a scheme is an element of the offense of mail fraud, and therefore, actions pursuant to that scheme should be considered "conduct that is the basis of the offense of conviction." *Hughey* thus supports restitution for all victims of the scheme.

Bennett relies in part on the Third Circuit's statement that *Hughey* "rejected the decisions of a number of courts of appeals that had permitted restitution in the full amount of the loss caused by a unified scheme so long as a single conviction arose out of that scheme." *United States v. Furst,* 918 F.2d 400, 410 (3rd Cir.1990). In *Furst,* however, the court was not faced with a violation of the mail fraud statute in which the existence of a scheme is an element of the offense, but rather addressed a conviction based upon making false statements in a bank record which does not require proof of a scheme. Therefore, *Furst* did not address a situation in which the unitary scheme is alleged as an element of the offense. Other circuits have expressed similar interpretations of *Hughey* but the interpretation in each of those cases was dicta. For instance, in *United States v. Duvall,* 926 F.2d 875 (9th Cir. 1991), the Ninth Circuit allowed restitution for the scheme in a mail fraud conviction because restitution was imposed pursuant to 18 U.S.C. § 3561 rather than the VWPA. The court refused to extend *Hughey* to § 3561, thus implying that *Hughey* would bar restitution if applicable. Because only § 3561 was involved in that case and the court found that *Hughey* did not apply to that section, the effect of *Hughey* on restitution in a mail fraud conviction was not an issue before the court.

In a more direct discussion of the issue, the court in *United States v. Marsh,* 932

---

**1.** Not all convictions involving fraud would allow such extensive restitution. For instance, in *Hughey* the government was required to prove an intent to defraud in convicting Hughey of unauthorized use of a credit card. The offense

did not, however, require proof of a scheme to defraud, and thus, the evidence of other credit card thefts was not conduct forming the basis of the conviction.

F.2d 710, 712–13 (8th Cir.1991), stated that restitution may not be imposed for the entire scheme in a mail fraud conviction but is limited to the specific facts of the individual counts. The two non-authoring judges on the panel, however, did not join in that portion of the court's opinion. Those two judges instead concurred in the result with respect to that part of the opinion. Therefore, that holding gained the support of only one judge, and is not the holding of the Eighth Circuit. In sum, we have not found any precedent in other circuits which would preclude restitution for the entire scheme in a mail fraud conviction. Moreover, we find the reasoning in the cases discussed above to be unpersuasive. The Supreme Court in *Hughey* cautioned against an expansive interpretation of the VWPA that would allow restitution for actions beyond the offense of conviction. That does not mean, however, that we should unduly restrict the VWPA to exclude restitution for actions which are elements of the offense of conviction.

Our conclusion that restitution is permissible for victims of the scheme when the scheme is an element of the offense does not end our inquiry. *Hughey* allows restitution only for the *specific* conduct that is the basis of the offense of conviction. The scheme concept is by its nature an amorphous one, and may only support an award of restitution if it is defined with specificity. A contrary rule would allow vague allegations of a scheme to support restitution based upon broad, unsubstantiated conduct. The language of the VWPA, as interpreted in *Hughey*, precludes such speculative awards. In the present case, however, the defendant acknowledged the scope of the scheme in the plea agreement, and agreed to pay restitution with respect to more than eighty vehicles which he purchased. Therefore, the scheme is specifically defined in this case. Under these circumstances, the court appropriately awarded restitution for the losses incurred in the scheme to defraud. Moreover, Bennett is not entitled to retroactive application of *Hughey*, regardless of whether that case would help him or not. Bennett is here because, without dispute, he violated the terms of his parole by failing to pay restitution. Those parole terms were set when Bennett was sentenced in 1985, and Bennett had his chance to appeal that sentence and those parole terms at that time. Even when the issue is constitutional, defendants generally are not entitled to collaterally attack their convictions or sentences on the basis of a change in the law. *See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). All the more, a defendant should not be allowed, years later, to take advantage of a change in statutory construction that he was free to argue on direct appeal.

This conclusion makes sense. Bennett's case was a plea bargain. By agreeing to pay the restitution at issue, Bennett received lighter treatment, perhaps in the form of having fewer counts of mail fraud charged against him. Now that the years have passed and adverse witnesses are probably unavailable, Bennett wants out of the deal. He should no more be allowed to turn back the clock than should another defendant who might petition for a *refund* of fines paid in restitution many years ago. "[T]he principle of finality ... is essential to the operation of our criminal justice system." *Teague,* 109 S.Ct. at 1074. That principle decides Bennett's appeal. Accordingly, the decision of the district court is AFFIRMED.