978 F.2d 315
 UNITED STATES of America, Plaintiff-Appellee,
v.
John M. TURINO, Defendant-Appellant.
 No. 91-3438.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 20, 1992.
Decided Oct. 23, 1992.
As Amended Dec. 9, 1992.
 
 John F. Podliska, Asst. U.S. Atty. (argued), Criminal Div., Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.
 Matthew F. Kennelly (argued), Cotsirilos, Stephenson, Tighe & Streicker, Chicago, Ill., for defendant-appellant.
 Before CUDAHY and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Senior Circuit Judge.
 
 
 1
 This appeal raises an issue that has come up three times before this court: whether the district court erred in imposing restitution based on an entire scheme in a mail fraud case in the absence of a specific guilty finding on each of the fraudulent acts underlying that scheme.I.
 
 
 2
 John M. Turino was indicted along with seven codefendants in a thirty-five count indictment which charged mail fraud, wire fraud, and interstate transfer of money obtained by fraud under 18 U.S.C. §§ 1341, 1343, and 2314. This indictment charged that from April 1984 to November 1984, the eight defendants had engaged in a scheme to defraud 120 commodities investors through the operation of Whitehall International Investors, Inc. ("Whitehall"), a commodity brokerage company with its main sales office in Chicago and two additional offices in Boca Raton, Florida, and Irvine, California. Count One of the indictment alleges that the defendants obtained over $1.02 million from 120 customers and that the defendants diverted over $500,000 for their commissions. The other counts charged various defendants with specific acts in which the defendants either used the mails or wires to perpetrate fraud or acts in which the defendants caused a transfer across interstate lines in order to perpetrate fraud. The first paragraph of each of the thirty-four counts specifically incorporates by reference the allegations in Count One which outline the fraudulent scheme.
 
 
 3
 Turino pled guilty to Counts Six and Thirty on the basis that "the charges contained in Counts Six and Thirty of the indictment is [sic] sufficient to prove his guilt beyond a reasonable doubt." Plea Agreement at 1. Counts Six and Thirty, although incorporating by reference the general fraudulent scheme outlined in Count One, specifically target the use of wire and mail to perpetrate a fraud against Sherman Niederecker. And Turino's plea agreement specifically outlines the facts that the government could prove in order to demonstrate that Turino used wires and mails in perpetrating a fraud against Niederecker. The plea agreement does not, however, contain a detailed outline of the facts that the government could prove in order to demonstrate the scheme alleged in Count One of the indictment. Rather, in reciting facts that could be proved beyond a reasonable doubt, the plea agreement generally states, "The government's evidence would further show that TURINO made similar [fraudulent] statements to other customers of Whitehall." Plea Agreement at 3.
 
 
 4
 Turino's plea agreement not only contains a specific plea to Counts Six and Thirty of the indictment and a summary of facts that could be proved at trial, but the agreement also states, "the total potential sentence carried under the counts to which defendant will plead guilty is ten (10) years imprisonment, a $2,000 fine, as well as any restitution ordered by the Court." Plea Agreement at 4 (emphasis added). Moreover, Turino acknowledged at the April 1991 plea proceeding that he understood that he could be ordered to pay restitution. This acknowledgment is demonstrated in the following colloquy between Turino and Judge Williams:[1]
 
 
 5
 THE COURT: Do you also understand the Court could order restitution, that is, you pay certain moneys back if moneys are--if moneys are due and owing to anyone as a result of this scheme? Do you understand that?
 
 
 6
 THE DEFENDANT: Yes, Your Honor.
 
 
 7
 Then in May 1991, before proceeding to sentencing, Judge Marshall inquired of the parties whether there were any corrections that the parties wished to raise with respect to either of the presentence reports. Turino's counsel proposed eight "fairly insignificant" changes, including address changes, spelling changes, changes in employment history, and the description of Turino's Florida apartment. But, no further changes were requested. Judge Marshall then rendered sentence. Judge Marshall suspended imposition of sentence, placed Turino on probation for five years, and imposed a period of six-month work release. Then Judge Marshall turned to the issue of restitution, which is the crux of this appeal.
 
 
 8
 Although the plea agreement specifically outlines the facts that could prove the use of mails and wires to perpetuate a fraud against Niederecker without also outlining the facts that could prove the general scheme contained in Count One of the indictment, the district court ordered restitution based on the larger scheme alleged in Count One. That is, the district court looked to the entire scheme, determined that the defendant had benefitted from the scheme, and imposed restitution of $30,000. After imposition of the sentence, Turino's counsel questioned the legal authority of the court to impose a $30,000 restitution order. The court responded that Turino's total compensation at Whitehall was $29,000 and that by pleading guilty to Counts Six and Thirty, Turino had embraced the entire scheme as alleged in Count One. The court then reduced the restitution to $29,000 "to be utterly safe."
 
 
 9
 The defendant argues that the district court acted outside its legal authority when ordering restitution based on the general scheme alleged in Count One rather than basing the restitution solely on the transactions with Niederecker that were specifically outlined in the plea agreement. Based on this argument, Turino filed a motion to correct sentence under Rule 35(a) of the Federal Rules of Criminal Procedure. The district court denied this motion as well as Turino's later motions to reconsider. Turino then appealed to this court.
 
 
 10
 The government argues that the district court acted within its authority when basing its sentence of restitution on the scheme specifically outlined in Count One of the indictment. We agree and affirm the district court's sentence.
 
 II.
 
 11
 The first issue we must address is under which act the district court imposed the order of restitution. Both the Victim and Witness Protection Act of 1982 ("VWPA"), former 18 U.S.C. § 3579 and renumbered as § 3663, and the Federal Probation Act ("FPA"), former 18 U.S.C. § 3651, were in effect at the time of Turino's offenses. Both of these Acts would have provided the district court with authority to order restitution. However, the district court did not specify under which Act it was imposing sentence. Turino views the Supreme Court decision in Hughey v. United States, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), as favorable to his claims of error. The Court in that case interpreted Section 3579 of the VWPA of 1982, and in hopes of deriving any possible benefits from that decision, Turino argues that his sentence was likewise imposed under that statute. Turino has cited several Court of Appeals decisions in which the courts in case of ambiguity assumed that the district court imposed restitution under the VWPA. See, e.g., United States v. Kress, 944 F.2d 155, 158 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992); United States v. Padgett, 892 F.2d 445, 448 (6th Cir.1989). Moreover, there is some argument that the FPA might deserve a similar interpretation to that given the VWPA in Hughey. But, in any event, we will give the defendant the benefit of the doubt and assume that the sentence was rendered under the VWPA.
 
 
 12
 In Hughey the Supreme Court held that the VWPA limits restitution to the "loss caused by the specific conduct that is the basis of the offense of conviction." Hughey, 495 U.S. at 413, 110 S.Ct. at 1981. In Hughey the defendant was charged with several counts of unauthorized use of a credit card and several counts of theft by a United States Postal Service employee. Hughey pled guilty to one count of unauthorized use of a single credit card. The sentencing court imposed restitution under the VWPA. Id. at 413-14, 110 S.Ct. at 1981-82. When imposing restitution the sentencing court considered losses incurred in credit card thefts that did not serve as the basis for the conviction. The Court in Hughey held that the sentencing court erred in basing the order of restitution on offenses for which the defendant was not convicted.
 
 
 13
 Turino argues that the district court's imposition of restitution, which was based on the scheme alleged in Count One, was illegal under the authority of Hughey. This court has addressed the application of Hughey in cases involving convictions for mail fraud under 18 U.S.C. § 1341 in three separate opinions: United States v. Bennett, 943 F.2d 738 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992); United States v. Brothers, 955 F.2d 493 (7th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 142, 121 L.Ed.2d 94 (1992) (91-8546); United States v. Langer, 962 F.2d 592 (7th Cir.1992).[2] In the first of these decisions, Bennett, the defendant, like Turino, alleged that it was error to impose an award of restitution under the VWPA for the entire mail fraud scheme when Bennett had only pled guilty to two counts. More specifically, Bennett was indicted for a scheme to transmit false and fraudulent applications for title/registration on vehicles and a scheme to alter odometers on cars sold to customers over a nearly two-year period. Bennett, 943 F.2d at 739-40. Bennett pled guilty to two counts involving two vehicles, but agreed in the plea agreement that the court could impose restitution for eighty vehicles. Id. And the judge did just that. Bennett, like Turino, argued that Hughey prevented the judge from sentencing him based on the entire mail fraud scheme. Rather, Bennett argued that Hughey limited his permissible restitution to losses caused by the vehicles involved in the two counts to which he pled guilty. This court, however, rejected this argument after emphasizing that "[p]roof of a scheme is an element of the offense of mail fraud, and therefore, actions pursuant to that scheme should be considered 'conduct that is the basis of the offense of conviction.' " Id. at 740 (quoting Hughey, 495 U.S. at 414, 110 S.Ct. at 1981). And we, therefore, upheld the sentence in that case. Id. at 741. Nonetheless, although supporting the sentence, we did caution, "[t]he scheme concept is by its nature an amorphous one, and may only support an award of restitution if it is defined with specificity." Id.
 
 
 14
 Turino first asks us to overrule the decision in Bennett as being contrary to Hughey. However, we will not do this particularly considering that our two later decisions in Brothers and Langer reaffirm and possibly expand Bennett. Turino also argues that the government failed to meet Bennett 's specificity requirements. Turino's argument seems to be that the sentencing court can only look to the plea agreement in determining whether the scheme has been defined with the requisite specificity. However, our two post-Bennett decisions demonstrate that the sentencing court can look beyond the plea agreement and to the indictment when determining if a scheme has been demonstrated with the requisite specificity to support an award of restitution for that scheme.
 
 
 15
 In Brothers the district court sentenced the defendant for restitution based on the entire fraudulent scheme presented in the indictment. The defendant, however, argued that this order of restitution was unlawful because it was based on the scheme alleged in the indictment, rather than being limited to the three checks that he was convicted of improperly receiving at trial. Brothers, 955 F.2d at 496-97. In Brothers this court looked to the indictment and concluded that the scheme was proven with the requisite specificity to support an award of restitution for the entire scheme. Id. at 497. Likewise, in Langer this court looked to the indictment in affirming a sentence for restitution. Langer, 962 F.2d at 601. In addition, not only did the court in Langer allow restitution based on allegations in the indictment, but restitution was based on allegations far less specific than those contained in the indictment before us in this case. Id. That is, in Langer we found that an award of $251,250.37 in restitution was justified under an indictment that described a scheme between specific dates and which was perpetuated by specific conduct, but which apparently did not specifically outline the amount of money that the fraudulent acts cost its victims. Id.
 
 
 16
 These decisions when read together indicate that because the scheme is an element of the offense of mail fraud, a conviction for mail fraud can support a conviction for a broad scheme even though the defendant is not specifically convicted for each fraudulent act encompassed within this scheme. And these decisions indicate that it is appropriate to look to the indictment as an indication of the scope of the scheme. Moreover, considering that the scheme is also an element of the offense of wire fraud under 18 U.S.C. § 1343, the same can be said of convictions for wire fraud.
 
 
 17
 Turino pled guilty to wire fraud under Count Six of the indictment and to mail fraud under Count Thirty of the indictment. Admittedly, the plea agreement in this case does not detail the underlying scheme as did the plea agreement in Bennett. However, both Count Six and Thirty, to which Turino pled guilty, explicitly incorporate the very specific allegations of the scheme contained in Count One of the indictment. Moreover, Turino admits in the plea that the government could prove beyond a reasonable doubt that he made misrepresentations to customers other than Niederecker--the customer that was specifically mentioned in Count Six, Count Thirty, and in the body of the plea agreement. These facts, as well as Turino's acknowledgement in his plea and before Judge Williams that he may owe restitution for the scheme, all justify the district court's reliance on the description of the scheme contained in Count One of Turino's indictment.
 
 
 18
 Count One of the indictment gives a very detailed rendition of the mail and wire fraud investment scheme. The indictment alleged that the scheme involved the solicitation of funds from customers of Whitehall by means of fraudulent representations. And Count One describes nine specific fraudulent representations that were made pursuant to this scheme. The indictment also lists the names of particular customers to whom such misrepresentations had been made and by which defendant. Count One further alleges that the co-schemers misled customers to believe that an account would be traded only in commodities that the customer specified, that accounts would not be traded frequently, and that a trade would not be entered without the customer's prior knowledge and consent. And the charged scheme in Count One included trading in account and billing commission for such trades after the customers gave instructions to cease trading.
 
 
 19
 Finally, Count One describes a scheme in which the defendant traded in a manner that generated commissions but ignored the best interests of the customers. Indeed, this Count lists ninety-one customer accounts that were traded in a manner to generate commissions despite the interests of the clients. And this Count describes the total number of trading days in which the account was open, the amount of the customer's investment, any withdrawals from the account, trading gains or losses, commissions charged, the ending ledger balance, and the total number of trades in the account. Count One indicates that all this led to trading losses of $167,617 and commissions of $625,215. And, as for the customers that Count One alleges Turino dealt with, there was allegedly a total trading loss of $65,662 and commissions of $84,430.
 
 
 20
 Considering the indictment details a scheme that allegedly resulted in nearly $800,000 in total losses to customers including over $150,000 in total losses to Turino's customers, we conclude that Judge Marshall acted within the law in ordering Turino to pay $29,000 in restitution.[3]III.
 
 
 21
 For the above reasons, we affirm Turino's sentence.
 
 
 
 [1]
 Judge Williams sat in for Judge Marshall during the April 1991 plea proceeding
 
 
 [2]
 The VWPA of 1982 was amended in 1990 under the Crime Control Act of 1990. However, the restitution orders in Bennett and Brothers, like the order in this case, were made pursuant to the 1982 version of the VWPA, 18 U.S.C. § 3579, renumbered as § 3663. But, in any event, this court concluded in Brothers that Bennett 's analysis applies to the 1990 amended version. Brothers, 955 F.2d at 497 n. 3
 We further note that this is a pre-sentencing guideline case. Nonetheless, Bennett, Brothers, and Langer indicate that this is a point without a difference with respect to restitution orders under the VWPA because none of those decisions indicated whether they were pre- or post-sentencing guideline decisions.
 
 
 [3]
 Turino has placed much emphasis on the fact that in entering his plea he did not admit to guilt but merely admitted that the government could prove the counts to which he pled beyond a reasonable doubt. We, however, fail to see the significance of this fact to the disposition of this case