983 F.2d 1073
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bruce G. LIVINGSTON, Defendant-Appellant.
 No. 91-3073.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 17, 1992.
Decided Dec. 28, 1992.
 
 Before POSNER, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Dr. Bruce G. Livingston was convicted of using the mails in furtherance of a scheme to defraud, in violation of 18 U.S.C. § 1341, and of making false statements in applications for payment of Medicare funds, in violation of 42 U.S.C. § 1395nn. As part of his sentence, Livingston was ordered to make restitution to the victims of his fraudulent scheme. Livingston appeals the district court's denial of his motion to correct his sentence. Fed.R.Crim.P. 35(a). He contends that the amount of restitution, $100,000, is excessive because it includes payments to individuals who were not victims of his offenses. Because the district court correctly determined that the amount of restitution is not excessive, we affirm the district court's judgment.
 
 I.
 
 2
 On January 4, 1990 a grand jury sitting in the Northern District of Illinois returned an indictment against Livingston, a physician. The indictment consisted of sixty-nine counts. Forty counts charged Livingston with mail fraud in violation of 18 U.S.C. § 1341. Twenty-nine counts charged him with making false statements in applications for payment of Medicare funds, in violation of 42 U.S.C. § 1395nn. After a bench trial, Livingston was convicted of thirty-seven counts of mail fraud and of twenty-eight counts of making false statements. He was acquitted of four counts. The district court sentenced Livingston on March 15, 1990. The court exercised its authority under the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. §§ 3579, 3580, and ordered Livingston to make restitution in the amount of $100,000.[1]
 
 
 3
 Livingston did not directly appeal his sentence but, instead, on July 11, 1991 filed a motion to correct an illegal sentence pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure.[2] In his motion, Livingston asked the district court to modify the restitution part of his sentence. He contended that the amount of restitution was excessive in light of the Supreme Court's decision in Hughey v. United States, 495 U.S. 411 (1990). In Hughey, the Supreme Court held that "restitution as authorized by the [VWPA] is intended to compensate victims only for losses caused by the conduct underlying the offense of conviction." Id. at 416. Livingston contended that his sentence contravened the Supreme Court's holding in Hughey because he had been ordered to make restitution to individuals who were not "victims" of his offenses. The district court disagreed, stating that all the individuals named in the indictment were victims under the VWPA and that these individuals had suffered at least $100,000 in losses. Accordingly, the court denied Livingston's motion. United States v. Livingston, No. 89 CR 1006 (N.D.Ill. Aug. 20, 1991). Livingston timely filed a notice of appeal.
 
 II.
 
 4
 Livingston's appeal raises a single issue that merits discussion.[3] That issue is whether the district court based its order to pay restitution on losses suffered by individuals who were not "victims" of Livingston's mail fraud within the meaning of the VWPA and Hughey. Specifically, this appeal focuses on two paragraphs of the lengthy indictment: paragraphs 12 and 16 of Count One. Count One charges Livingston with mail fraud. Paragraph 12 lists twenty-six patients whose names Livingston used in submitting false insurance forms. Paragraph 16 states that Livingston sold his fraudulent scheme to a fellow physician as a purportedly legitimate business. Livingston contends that these two paragraphs were part of the "Preamble" of the indictment and, as such, were not substantive counts on which he was convicted. Therefore, Livingston asserts, the individuals identified in paragraphs 12 and 16 are not "victims" entitled to restitution within the meaning of the VWPA and Hughey.
 
 
 5
 Livingston's contention lacks merit. As discussed below, because Livingston was convicted of mail fraud, an offense requiring proof of a scheme to defraud, Livingston can be ordered to make restitution for the broad scheme alleged in the indictment, even though he was not specifically convicted for each fraudulent act encompassed within the scheme.
 
 
 6
 The issue presented in this case has been resolved by a series of decisions by this court following the Supreme Court's decision in Hughey v. United States. The first of these decisions, United States v. Bennett, 943 F.2d 738 (7th Cir.1991), cert. denied, 112 S.Ct. 2970 (1992), was decided about three weeks after Livingston filed his notice of appeal. In Bennett, the defendant was indicted for a scheme to transmit false and fraudulent applications for title/registration on vehicles and a scheme to alter odometers on cars sold to customers over a period of nearly two years. Id. at 739-40. Bennett pleaded guilty to two counts of mail fraud but agreed in the plea agreement that the district court could impose restitution for eighty vehicles. Bennett argued that Hughey prevented the court from sentencing him based on the entire mail fraud scheme. Rather, he argued, the court could impose restitution for only the two counts to which he pleaded guilty. This court rejected this argument and upheld the order of restitution, stating that "[p]roof of a scheme is an element of the offense of mail fraud, and therefore, actions pursuant to that scheme should be considered 'conduct that is the basis of the offense of conviction.' " Id. at 740. However, this court cautioned that "[t]he scheme concept is by its nature an amorphous one, and may only support an award of restitution if it is defined with specificity." Id. at 741.
 
 
 7
 Next in this line of cases came United States v. Brothers, 955 F.2d 493 (7th Cir.), cert. denied, 113 S.Ct. 142 (1992), perhaps the case most similar to Livingston's case. In Brothers, the indictment alleged a scheme from 1972 until 1987 to defraud the United States by fraudulently obtaining checks for disability benefits. Brothers was convicted for improperly receiving three checks. However, the district court sentenced the defendant to make restitution based on the entire fraudulent scheme presented in the indictment. Id. at 496-97. This court applied Bennett and upheld the district court's order of restitution. Id. at 497. Both of Bennett 's requirements were met. Because Brothers was indicted and convicted for engaging in a scheme to defraud, the order of restitution did not exceed the scope of his conviction. And furthermore, the scheme was defined in the indictment with adequate specificity to support the order of restitution. Id.
 
 
 8
 In this case, as in Bennett and Brothers, the government proved, beyond a reasonable doubt, the existence of the scheme to defraud alleged in the indictment. Therefore, in determining the amount of restitution that Livingston would owe, the district court justifiably considered all of Livingston's actions in furtherance of the scheme, provided that the indictment described them with adequate specificity.
 
 
 9
 Paragraphs 1 through 17 of Count One of the indictment set out Livingston's scheme with great specificity. These paragraphs describe in detail how Livingston submitted over sixty false claims for insurance or Medicare payments totaling in excess of $100,000 for physical examinations and medical and laboratory tests that were never performed. Furthermore, they identify the particular insurance carriers that Livingston defrauded. Paragraph 12 names twenty-six patients whose names were used on false insurance claims in furtherance of the fraud. Paragraph 16 specifies that Livingston sold his fraudulent scheme for $65,000 to a particular physician. Certainly, Livingston's fraudulent scheme is described in sufficient detail to be considered by the district court in determining the amount of restitution.
 
 
 10
 Livingston urges us to focus on the "errors in draftsmanship," which cause the indictment to "work substantive prejudice against Appellant, by including information in Count I, which, clearly is not meant to be in Count I." Appellant's Brief at 9. However, Livingston's focus on the specific counts is misdirected. "After Hughey, the appropriate focus is on the conduct that forms the basis for the offense." Bennett, 943 F.2d at 740. Another recent decision by this court, United States v. Turino, 978 F.2d 315 (7th Cir.1992), is instructive.
 
 
 11
 The defendant in Turino pleaded guilty to two counts of an indictment charging him with thirty-five counts of mail fraud. Turino had not been specifically convicted of each fraudulent act alleged in the indictment, but the scope of the scheme alleged in the indictment encompassed these fraudulent acts. Accordingly, this court upheld the district court's order of restitution based upon all thirty-five counts in the indictment. Id. at 317.
 
 
 12
 Count One of the indictment in Turino consisted of a detailed rendition of the mail fraud scheme. It described nine specific fraudulent representations that were made in furtherance of the scheme, and it listed the names of particular customers to whom the misrepresentations were made. The counts to which Turino pleaded guilty explicitly incorporated the very specific allegations of the scheme contained in Count One of the indictment. Id. at 319. This court found that the district court, in determining the amount of restitution, justifiably relied on this description of the scheme in Count One. Id.
 
 
 13
 The structure of the indictment in this case is strikingly similar to the structure of the indictment in Turino. Count One consists of seventeen paragraphs that describe in detail Livingston's fraudulent scheme. Paragraph 12 lists the names of particular patients whose names were used in false insurance-claim forms. Paragraph 16 identifies the particular physician to whom Livingston sold his fraudulent scheme as a purportedly legitimate business. The subsequent counts in the indictment that allege mail fraud explicitly incorporate these seventeen paragraphs. Together, the seventeen paragraphs of Count One and the specific counts allege the two components of a mail fraud scheme: the conduct comprising the scheme and the mailings in furtherance of it. See Schmuck v. United States, 489 U.S. 705, 721 (1989). Livingston was convicted of thirty-seven counts of mail fraud. As in Turino, the district court justifiably considered information from Count One that was explicitly incorporated into counts of the indictment on which Livingston was found guilty.
 
 III.
 
 14
 The conduct described in paragraphs 12 and 16 clearly was part of the scheme to defraud for which Livingston was convicted. The district court properly considered it in imposing its sentence of restitution. We therefore AFFIRM the district court's judgment.
 
 
 
 [1]
 Livingston's sentence also included one year in the custody of the Attorney General to be served in a work release program, four years of probation during which he was to perform 600 hours of community service, a $50,000 fine, and a prohibition on practicing medicine for renumeration during the period of work release and probation
 
 
 [2]
 As the government correctly notes in its brief, the former version of Rule 35(a) applies. The current version of the rule applies to offenses committed after November 1, 1987. Livingston committed his offenses before that date. Under the applicable version of Rule 35(a), since Livingston filed his motion more than 120 days after he was sentenced, the district court could correct the sentence only if it were an illegal sentence
 
 
 [3]
 Livingston also contends that paragraphs 12 and 16 of Count One of the indictment involve conduct barred by the five-year statute of limitations. 18 U.S.C. § 3282. This contention, however, does not merit detailed discussion. The parties stipulated that "[a]ll of the defendant's conduct described in the superseding indictment, including the conduct described in paragraphs 12 and 16 of Count One, comprised one unitary scheme to defraud, the scheme for which the defendant was convicted." Government's Response to Defendant-Appellant's Motion for Leave To File Stipulation of Facts, United States v. Livingston, No. 91-3073 (7th Cir. Mar. 31, 1992); see United States v. Livingston, No. 91-3073 (7th Cir. Mar. 31, 1992) (order granting motion for stipulation of facts). A unitary scheme to defraud that began outside the limitations period is not barred by the statute of limitations as long as mailings in furtherance of the scheme were made within the limitations period. See United States v. Dunn, 961 F.2d 648, 650 (7th Cir.1992). The conduct described in paragraphs 12 and 16 was not barred by the statute of limitations because Livingston made mailings in furtherance of the fraud through at least November 26, 1986, well within five years of January 4, 1990, the date that the indictment was returned