**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John E. HUELS, Defendant–Appellant.**

**No. 93–3788.**

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1994.

Decided July 29, 1994.

Richard H. Lloyd, Asst. U.S. Atty., Thomas Edward Leggans (argued), Office of U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

Ronald A. Niemann (argued), Christopher B. Daniels, Niemann & Parker, Centralia, IL, for defendant-appellant.

Before CUMMINGS, MANION and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

In the summer of 1992, the Illinois Drug Task Force and the Illinois State Police discovered nine marijuana patches on a piece of public land near a lake in Fayette County, Illinois. They noticed that the plants had been placed in uniform holes (suggesting the use of an auger) and rows, "sexed" (male plants having been removed and discarded) and fertilized. Some of the plants had plastic around their bases, which suggested to the agents that they had been started indoors. The nine plots, which contained a total of 175 plants, were similar in all these respects.

Agents surveilling the plots saw John Huels, clad in hip boots and gloves, tending the plants in one of the patches, later designated "Garden 1," on August 8, 1992. After 10 minutes of observation, they arrested him. According to Agent Reid, one of the arresting officers, Huels commented that "a person has to do something when they're hungry" and explained that he was wearing gloves to protect his hands while weeding. (August 10, 1993 Tr. at 75–76.) The agents found corn knives and machetes in Huels' boat and spades and a weed whip in his truck. The agents also found a bag of commercial top soil, coils of hose, and a water pump located between two of the patches, "Garden 1" and "Garden 2." The water pump belonged to Jim Isaak, a friend and former employer of Huels, who later posted Huels' bond.

At trial, Huels contended that he had been in the area of the gardens for the purpose of hunting and fishing, and that he had merely stumbled onto the marijuana patch while scouting for deer. He explained that the implements found in his boat and truck were not gardening equipment, but hunting and fishing gear. He also pointed out that he had stationary fishing lines in place near his boat on the day of his arrest and that the gloves he wore related to his work with those lines. He denied having made the inculpatory comments attributed to him by Reid following his arrest. Finally, Huels showed, by way of his podiatrist's testimony, that since May 1992 he had suffered from gout, which affected his ability to walk. He contended that he had been unable to walk at the time the marijuana would have been planted.

Steven Coates, a government witness who had previously been convicted of possessing cocaine and marijuana, testified for the government in rebuttal that he and Huels had grown marijuana together in the same location in 1991, and that they had used all of the same techniques that had been used on these plots.

Huels was convicted by a jury on August 13, 1993 of knowingly and intentionally manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). He was subsequently sentenced under the Guidelines to 63 months of incarceration, after the sentencing judge found him responsible for all 175 of the plants. On appeal, he raises a multiplicity of issues, all of which lack merit, and we affirm.

## I. Motion for Acquittal

■ After the jury returned its verdict, Huels renewed a motion for a judgment of acquittal under Fed.R.Crim.P. 29(c) that he originally had made at the close of the government's case, arguing that the evidence was insufficient to sustain his conviction. (R. 27.) He now appeals the district court's denial of that motion. Our review of the denial of a motion for a judgment of acquittal based on insufficiency of the evidence is limited. As we explained in *United States v. Reed,* 875 F.2d 107, 111 (7th Cir.1989):

"[T]he test that the court must use is whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government ... bear[ing] in mind that 'it is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts, and draw reasonable inferences.' "

(quoting *United States v. Marquardt,* 786 F.2d 771, 780 (7th Cir.1986)); *see also United States v. Beall,* 970 F.2d 343, 345 (7th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1291, 122 L.Ed.2d 683 (1993); *United States v. Hagan,* 913 F.2d 1278, 1281 (7th Cir.1990); *United States v. Reis,* 906 F.2d 284, 291–92 (7th Cir.1990).

■ The above-detailed evidence was certainly sufficient for a reasonable jury to find Huels guilty beyond a reasonable doubt. Huels was seen in the marijuana garden apparently tending the plants, he possessed equipment that was appropriate for that task, the water pump found among the plants belonged to his friend, and, according to Reid, he made inculpatory statements following his arrest. Huels' argument on appeal is essentially that the government's evidence was not credible and that if the jury had made various inferences in Huels' favor it would have acquitted him. But, as the quoted portion of *Reed* makes clear, all credibility determinations are within the jury's province and are not ours to reconsider. In addition, the fact that the evidence could have supported different inferences is not relevant, as we would only reverse the jury's verdict if it was unreasonable when viewing the evidence in the light most favorable to the government. Finally, Huels argues that the jury's confusion was evidenced by two questions the jury asked regarding the meaning of "growing." (*See* August 13, 1993 Tr. at 350.) He argued before the district court that "[s]ince there was insufficient evidence presented by the government to clear up the jury confusion, the evidence can not be said to be sufficient to convict this defendant." (R. 27 at 2.) The jury's confusion about a question of law, however, has no bearing on the sufficiency of the evidence to support its verdict.

The district court's denial of Huels' motion was therefore proper.

## II. Testimony of Steven Coates

■ Huels next contends that the district court should not have admitted Steven Coates' testimony about having previously grown marijuana in the same location with Huels. (*See* August 12, 1993 Tr. at 282–83.) Because Huels did not object to the testimony when it was offered, we review its admission for plain error only.[1] Huels' exception to the testimony rests on the principle that a witness may not be impeached on the basis of collateral matters raised for the first time on cross-examination. But Huels' reliance on that principle is misplaced. The reason for his presence in the marijuana patch was hardly a collateral matter; it went to the heart of his defense. As the government argues, the testimony was admissible under Fed.R.Evid. 404(b) to show the "absence of mistake or accident." Huels contended that he wandered into the marijuana garden by chance while hunting for deer. In response to the *government's* questions on cross-examination, he stated that he had never previously been on that plot of land. Coates' testimony was therefore admissible under Rule 404(b) to rebut Huels' theory. Moreover, the probative value of the testimony in light of Huels' defense clearly outweighed any possible prejudice or confusion, so that exclusion was not required by Fed.R.Evid. 403. The district court's admission of the testimony therefore was not plain error.

## III. Limiting Instruction

■ In a related argument, Huels challenges the district court's failure to give a limiting instruction to the jury regarding Coates' testimony. Huels' counsel had offered a modified version of Seventh Circuit Pattern Jury Instruction No. 3.22, which per-

tains to the testimony of accomplices. It provided:

> You have heard testimony from Steve Coates who stated that he was involved in the commission of a crime similar to the alleged crime charged against the defendant. You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

(August 12, 1993 Tr. at 314.) Finding that instruction inapplicable to this case (as Coates was not Huels' accomplice in this crime), the district court refused to give it. (*Id.* at 314–15.) Defense counsel did not tender an alternative instruction and the district court did not give one.[2] Huels now argues that the judge had a duty to give a limiting instruction regardless of his counsel's failure to propose one.

Because Huels failed to object to the jury instructions that were given, we again review for plain error only. *United States v. Brothers*, 955 F.2d 493, 496 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 142, 121 L.Ed.2d 94 (1992). We explained that standard of review in *Brothers*:

> "In deciding whether a defect in a jury instruction is 'plain error,' we must examine the entire record before us, and determine whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

955 F.2d at 496 (quoting *United States v. Torres*, 733 F.2d 449, 458 (7th Cir.), *cert. denied*, 469 U.S. 864, 105 S.Ct. 204, 83 L.Ed.2d 135 (1984) (internal quotation omitted)). Here, the evidence of other crimes certainly posed the potential for prejudice, as it involved exactly the same crime that was at issue in this trial. Despite our concern for that fact, however, we are ultimately persuaded that the district court's failure to give a limiting instruction was not plain error

---

1. Although Huels raised the objection in his post-trial motion for a new trial under Fed.R.Civ.P. 33 (*see* R. 27, 33), that does not cure his waiver of the objection by failing to raise it at trial.

2. Seventh Circuit Pattern Jury Instruction 3.08, which pertains to evidence of other crimes and would have been the appropriate instruction here, provides:

> You have heard evidence of acts of the defendant other than those charged in the indictment. You may consider this evidence only on the question of [the absence of mistake or accident.] This evidence is to be considered by you only for this limited purpose.

because the other evidence against Huels was so powerful. As already noted, he was essentially caught in the act of tending the garden, he possessed gardening equipment, his friend owned the water pump found near the plots, and he made inculpatory statements following his arrest. In light of that evidence, we find that the district court's failure to give the limiting instruction did not have a probable impact on the jury's finding of guilt, and thus did not amount to plain error.

## IV. Missing Witness Instruction

■ Huels also contests the district court's failure to give his proffered missing witness instruction regarding Jim Isaak, owner of the water pump found near Garden 2.[3] After agents Johnson and Worker had testified that the water pump and coiled hose were found on the path between Garden 1 and Garden 2 (August 11, 1993 Tr. at 138, 163–65), Huels' counsel brought out in his cross-examination of Worker that the pump did not belong to Huels. (*Id.* at 187–88.) During the government's redirect examination, Worker testified that "the man that owned the pump was a friend of Mr. Huels. He wa [sic] the one that bonded Mr. Huels out of jail." (*Id.* at 190.) Worker also testified that Huels at one time had worked on a part-time basis for the same man. (*Id.*) Apparently interested in emphasizing that the pump did not belong to Huels, Huels' counsel subsequently brought out in his direct examination of Huels that the dealer record card for the water pump showed Jim Isaak, the same man that had provided money for Huels' bond, to be its owner. (August 12, 1993 Tr. at 272–73.)

Huels now contests the district court's failure to give his proffered missing witness instruction regarding Jim Isaak, whom the government did not call to testify. His argument is based on the assumption that Isaak would have testified, as he did before an Illinois Grand Jury on September 1, 1992, that he did not in fact own the pump.

■ A defendant challenging a court's refusal to give a missing witness instruction, however, must show not only that the testimony would have been helpful to the jury, but also that the witness was under the government's control and unavailable to the defense. *United States v. Cochran,* 955 F.2d 1116, 1123–24 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992). As in *Cochran,* Huels has offered no facts suggesting that Isaak was either within the government's control or otherwise unavailable to Huels. Huels was free to subpoena Isaak if he wished to elicit his testimony. The district court's refusal to give the instruction was not therefore erroneous.

## V. Sentencing

In a footnote to the drug quantity table, U.S.S.G. § 2D1.1(c), the Sentencing Commission provided:

> In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. . . .

Holding Huels responsible for all 175 plants that were found in the nine gardens, the district court, pursuant to that footnote, calculated Huels' sentence as if his offense had involved 175 kilograms of marijuana. Under Guidelines section 2D1.1(c)(9), which applies to between 100 and 400 kilograms of marijuana, that amount established a base offense level of 26. In combination with a Criminal History Category of I, that offense level produced a sentencing range of 63 to 78 months. The court sentenced Huels at the low end of the range to 63 months of incarceration.

---

**3.** Huels proffered this instruction, based on Seventh Circuit Pattern Jury Instruction 3.25:

> It was peculiarly within the power of the government to produce Jim Isaak, who could have given material testimony on an issue in the case. The government's failure to call Jim Isaak may give rise to an inference that this testimony would be unfavorable to it.

> You should bear in mind that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
> (August 12, 1993 Tr. at 312.)

Huels now challenges his sentence on two grounds.

■ First, Huels argues that the district court erred in determining for sentencing purposes that he was responsible for all 175 marijuana plants. Huels asserts that he instead should have been sentenced based only on the 53 plants that were found in Garden 1 and Garden 2, which at the rate of 1 kilogram per plant, would have resulted in a base offense level of 20. U.S.S.G. § 2D1.1(c)(12).

■ A district court's calculation of the drug quantity is a finding of fact that must be supported by a preponderance of the evidence. *United States v. Beler*, 20 F.3d 1428, 1431 (7th Cir.1994). We review the court's determination for clear error. *Id.* We must affirm the district court's finding unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation omitted).

The district court explained its decision to sentence Huels based on the full amount of marijuana in this way:

> [T]he evidence showed pathways, the evidence showed the rows of plants, showed the auger holes, showed the hose, the pump, showed a relationship, in this court's view, a connection, of all nine plots together. I believe that the evidence was sufficient to allow the Court to find, and I do so find, that all nine plots are attributable to the defendant. In other words, that he was involved in the cultivation in one form or another, of all nine plots.

(November 12, 1993 Tr. at 20.) That finding was certainly not clearly erroneous. It was both well-reasoned and grounded in the trial evidence. It was supported by a preponderance of the evidence and we have no reason to believe that any mistake has been committed.

■ Huels' second challenge involves the constitutionality of the sentencing scheme that equates each plant up to fifty plants with 100 grams of marijuana while equating each plant (including the first fifty) with 1 kilogram of the drug if more than fifty plants are involved. Specifically, he argues that the scheme is unconstitutional because "the cre-ation of the level of disparity between those who manufacture more than fifty marijuana plants and those who manufacture less than fifty marijuana plants was not intended by Congress."

But this argument also fails. First, as Application Note 10 to Guidelines section 2D1.1 makes clear, the drug quantities and corresponding sentences set out in the guideline are based on 21 U.S.C. § 841(b)(1), and so certainly do reflect Congress' intent. Indeed, the fifty plant cut-off derives directly from the statute. *See* 21 U.S.C. § 841(b)(1)(D).

In addition, although Huels has not otherwise specified the basis for his constitutional challenge to the scheme, we note that we have previously considered and upheld its constitutionality. In *United States v. Webb*, 945 F.2d 967 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1228, 117 L.Ed.2d 463 (1992), we rejected the defendant's argument that because the assigned weights did not correspond to the actual yield of the plants and because the fifty plant cut-off was random, the sentencing scheme was "arbitrary and irrational, and thereby den[ied] him due process and the equal protection of the laws in violation of the fifth amendment." *Id.* at 968. We held that the constitution did not require the assigned weights to correlate with actual yields and that the fifty plant cut-off reflected Congress' intent to impose greater punishment on "major drug traffickers." *Id.* We also noted that the sentences were based on section 841, which had itself consistently withstood constitutional challenge. *Id.* at 969. Relying on *Webb*, we rejected a similar challenge to the constitutionality of the plant-drug equivalency scheme in *United States v. Young*, 997 F.2d 1204, 1208–09 (7th Cir.1993). We must therefore do so again here.

## VI. Conclusion

For these reasons, Huels' conviction and sentence are AFFIRMED.