[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 28, 2004
THOMAS  K. KAHN
CLERK

_____

No. 02-16559

_____

D.C. Docket No. 02-00413-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES T. DICKERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 28, 2004)**

Before TJOFLAT, BIRCH and GOODWIN*, Circuit Judges.

---

*Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by designation.

TJOFLAT, Circuit Judge.

I.

Appellant James T. Dickerson pled guilty to thirty-six counts of wire fraud and one count of Social Security fraud. The district court ordered him to pay restitution in the full amount of his victim's loss. Dickerson appeals, claiming that the restitution order unlawfully accounts for conduct occurring outside of the statute of limitations. We affirm.

II.

In August 1996, Dickerson, then unemployed, applied for Social Security disability benefits for depression, panic attacks, and HIV. The Social Security Administration (the "SSA" or the "Administration") approved his application and began disbursing benefits to him in November 1996. Dickerson received the benefits electronically; the United States Treasury Department in Philadelphia, Pennsylvania, transferred the funds directly into his credit union account.

Shortly after applying for disability benefits, in September 1996, Dickerson took a paying job. He did not notify the Administration of this fact, as he should have.[1] Instead, in his SSA questionnaires, he stated that he was not working and

_____

[1]As Dickerson recognizes, the SSA considers a person's work status in determining his eligibility for benefits. It is a crime for a person to withhold or falsify information about his work status, or any other factor bearing upon his eligibility, in applying for or receiving Social Security benefits. 42 U.S.C. § 408. According to the indictment, Dickerson, "[i]n his application for Social Security disability insurance benefits . . . agreed to 'notify the [Administration] if [he went] to work [either] as an employee or a self-employed person.'"

2

was unable to work due to his disabling condition. The Administration continually disbursed benefits to Dickerson in reliance on his omissions and misrepresentations.

In June 1998, the SSA discovered that Dickerson had received disability benefits while employed. Administration officials tried to contact him for an explanation, but he did not respond. Thus, in 2000, the SSA ceased disbursing funds to him. After Dickerson failed to answer further inquiries, the Administration in June 2001 notified him that it would investigate his eligibility. The investigation ended in early 2002, when the SSA concluded that Dickerson had indeed failed to report his employment while he was receiving benefits.[2]

On June 25, 2002, a Northern District of Georgia grand jury returned an indictment against Dickerson. The indictment had three parts. The first part, labeled "Counts 1-36," alleged that Dickerson (1) applied for disability benefits in August 1996, (2) received benefits by electronic transfer between October 1996 and June 2000, and (3) was throughout this period under an "affirmative obligation" to report any change in work status to the SSA. The second part of the indictment bore the title "The Scheme and Artifice to Defraud." It specified in

---

[2]As far as the record discloses, Dickerson has been continually employed since the fall of 1996, when he began receiving disability benefits.

detail how Dickerson had perpetuated a continuous fraudulent scheme between September 1996, when he began work without notifying the Administration, and June 2000, when the SSA last sent him benefits. This part enumerated the thirty-six counts of wire fraud.[3] Each count corresponded to an electronic transfer of disability benefits into Dickerson's credit union account between July 1997 and June 2000. As the parties agree, even though he received benefits as early as the fall of 1996, the five-year statute of limitations[4] prevented the Government from charging Dickerson for wire fraud occurring before July 1997. Finally, the third part of the indictment, labeled "Count 37," charged Dickerson with Social Security

---

[3]The federal wire fraud statute, 18 U.S.C. § 1343, provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years, or both.

[4]18 U.S.C. § 3282 states that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

fraud[5] for his continued failure to notify the SSA of his employment, starting in September 1996.

Dickerson entered a nonnegotiated guilty plea to all thirty-seven counts. The district court held a hearing on the plea on September 12, 2002. At the hearing, the court questioned Dickerson about his offenses and found that there was a factual basis for his guilty plea. It then asked the prosecutor to state the possible penalties. Among other things, the prosecutor said that the court could order Dickerson to pay "full restitution" to the SSA for the charged offenses "and any relevant conduct." Dickerson's counsel disagreed, contending that restitution was limited to the losses that resulted directly from the counts of conviction. Although the court accepted Dickerson's plea, it reserved ruling on his sentence and instructed the parties to brief the question of restitution.

After the plea hearing, the probation officer wrote a presentence investigation report (the "PSI"). The PSI described Dickerson's work history and

---

[5]The indictment alleged that Dickerson violated 42 U.S.C. § 408(a)(4), which provides:

Whoever having knowledge of the occurrence of any event affecting (1) his initial or continued right to any payment under this subchapter, or (2) the initial or continued right to any payment of any other individual in whose behalf he has applied for or is receiving such payment, conceals or fails to disclose such event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized; shall be guilty of a felony and upon conviction thereof shall be fined under Title 18 or imprisoned for not more than five years, or both.

itemized each of the benefit transfers that the SSA made to him. Consistent with the allegations in the indictment, the PSI stated that Dickerson (1) applied for SSA benefits in August 1996, (2) took a paying job in September 1996, (3) began receiving benefits in November 1996,[6] and (4) failed continually to respond to queries from the Administration about why he had received benefits while employed. According to the PSI, the SSA suffered a loss of $44,178.40 as a result of Dickerson's fraudulent scheme. Dickerson received most of this amount ($35,902.00) between July 1997 and June 2000, roughly the sum alleged in counts one through thirty-six of the indictment.[7] But he received a smaller portion ($6,992.00) before that time, between November 1996 and June 1997.[8] The

---

[6]The indictment alleged that Dickerson first received disability benefits in "about October 1996," rather than November 1996. Dickerson has made no issue of this minor discrepancy. Since the district court adopted the information in the PSI as its findings of fact, see infra, we accept November 1996 as the correct date.

[7]The indictment stated that Dickerson received $35,946.00 between July 1997 and June 2000. But according to the PSI, he received $35,902.00 in this period. The discrepancy relates to the wire transfer made to Dickerson on October 1, 1998. The indictment alleged that this transfer was for $918, but the PSI said that it was for $874. Because we affirm the district court's decision to order restitution for the entire scheme (i.e., the total sum of $44,178.40), this discrepancy is inconsequential.

[8]The $44,178.40 sum also included (1) $152.00 for "relevant conduct" that occurred in December 2000, but that was not charged in the indictment; and (2) $1,132.40 for additional supplementary medical insurance that Dickerson received from the SSA between October 1998 and October 2000. The record does not explain the factual basis of the $152 sum; the PSI merely listed it as an amount that Dickerson obtained in the course of his fraudulent scheme. As to the $1,132.40, according to the PSI, the SSA determined that Dickerson had received supplementary medical insurance in this amount, but that he was not entitled to it because he returned to work. The probation officer concluded that Dickerson received this sum pursuant to the common

6

probation officer recommended that the court order Dickerson to make restitution for the entire $44,178.40 sum.

After considering the PSI, on November 18, 2002, the court held the sentencing hearing. It began the hearing by informing the parties that it would adopt the facts in the PSI as its own findings. Both parties assented. The court then noted Dickerson's objection at the plea hearing about the amount of restitution and heard arguments on this issue from both sides. Dickerson maintained that the court could not order him to pay restitution for the benefits he received before July 1997. In his view, even if he had received those benefits criminally, such conduct was beyond the statute of limitations and therefore not subject to restitution. He contended that the correct amount of restitution was

scheme and therefore included it in the restitution recommendation. The parties in their briefs and at oral argument have failed to address this part of the restitution award. Dickerson's appeal focuses on the argument that he cannot be ordered to pay restitution for conduct occurring before the statute of limitations. This reasoning cannot apply to the medical insurance, however, as Dickerson did not begin to receive it until October 1998.

In the end, Dickerson has not waived his objections to these two components of the restitution order. He has continually stated that he cannot be required to pay more than $35,946.00, the total specified in the indictment. We find no fault with the inclusion of these two sums, however. Dickerson does not contest that he received these amounts pursuant to his common fraudulent scheme. As such, we need not deal with the statute of limitations question here. Because he received these amounts within the statute of limitations and in the course of "an offense that involves as an element a scheme" to defraud, 18 U.S.C. § 3663A(a)(2) requires Dickerson to pay full restitution to the SSA. See United States v. Hasson, 333 F.3d 1264, 1276 n.13 (11th Cir. 2003) (stating that §§ 3663(a)(2) and 3663A(a)(2) permit restitution for "the entire scheme or artifice to defraud furthered by the mailing or use of the wires.") Having dealt with this issue, we concern ourselves in the remainder of this opinion only with the amounts that Dickerson received outside of the statute of limitations, i.e., before July 1997.

7

$35,946.00, the total sum of the benefits he received within the statute of limitations.[9] After considering the arguments, the court, without explaining its reasoning, adhered to the $44,178.40 figure. It also sentenced Dickerson to five years probation, 180 days of home confinement, and a special assessment of $3,700.00.

Dickerson now appeals, seeking the same reduction in the restitution order as he did before the district court.

## III.

## A.

"This court reviews the legality of a criminal sentence, including an order of restitution, de novo." United States v. Cobbs, 967 F.2d 1555, 1556 (11th Cir. 1992).

A federal district court has "no inherent authority to order restitution, and may do so only as explicitly empowered by statute." United States v. Hensley, 91 F.3d 274, 276 (1st Cir. 1996). We therefore begin our analysis with the language of the statute supporting the district court's restitution order. The court was required to order restitution in this case[10] under the Mandatory Victims Restitution

---

[9] See supra note 7.

[10] It is unclear whether the court recognized that restitution was mandatory. At the plea hearing, it asked Dickerson, "[Do] you understand that you may be ordered and probably will be

8

Act of 1996 ("MVRA"), Pub. L. No. 104-132, 110 Stat. 1227, codified at 18

U.S.C. § 3663A.[11]

_____

ordered to make restitution in some amount to the victim in this offense?" The court may have perceived that it had discretion to order restitution under 18 U.S.C. § 3663. See infra note 13 and accompanying text. We need not divine the court's intent, however. As the crime of wire fraud falls within the provisions of § 3663A, see infra notes 11-12 and accompanying text, that statute applies.

[11]In relevant part, § 3663A reads as follows:

(a) (1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.
(2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.
(3) The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.
. . .

(c) (1) This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense—
    (A) that is—
        (i) a crime of violence, as defined in section 16;
        (ii) an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit; or
        (iii) an offense described in section 1365 (relating to tampering with consumer products); and

The MVRA obligates district courts to order restitution in certain cases, including wire fraud.[12] Section 3664 sets forth the procedures for ordering restitution. It demands that courts "order restitution to each victim in the full amount of each

(B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

(2) In the case of a plea agreement that does not result in a conviction for an offense described in paragraph (1), this section shall apply only if the plea specifically states that an offense listed under such paragraph gave rise to the plea agreement.

(3) This section shall not apply in the case of an offense described in paragraph (1)(A)(ii) if the court finds, from facts on the record, that—

(A) the number of identifiable victims is so large as to make restitution impracticable; or

(B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

(d) An order of restitution under this section shall be issued and enforced in accordance with section 3664.

[12]As 18 U.S.C. § 3663A(c)(1) states, restitution is mandatory

for[] any offense—

(A) that is—

(i) a crime of violence, as defined in section 16;

(ii) an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit; or

(iii) an offense described in section 1365 (relating to tampering with consumer products); and

(B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

Wire fraud is therefore "an offense against property under [title 18]," specifically, an "offense committed by fraud or deceit." By contrast, Social Security fraud, prohibited by 42 U.S.C. § 408, does not fall within the ambit of § 3663A.

victim's losses . . . and without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A).

As the parties agree, the outcome of this case depends upon the language of § 3663A(a)(1) and (2), which states:

> (a) (1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered <u>including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern</u> . . . .

(emphasis added).  The Government contends that by defining "victim" so broadly, Congress clearly intended to reach cases like Dickerson's.  The argument proceeds as follows: Dickerson committed the offense of wire fraud, which "involves as an element a scheme" to defraud.  The SSA is a "victim" not merely of the counts for which Dickerson was convicted, but more broadly, of all "criminal conduct in the course of the scheme, conspiracy, or pattern."  Although the statute of limitations prevents prosecution for wire fraud committed before

11

July 1997, Dickerson engaged in a single, ongoing scheme to defraud beginning in the fall of 1996. Thus, according to the Government, he may be ordered to pay restitution to the SSA for all of the disability benefits he received since the latter date.

Dickerson, on the other hand, contends that the Supreme Court's decision in Hughey v. United States, 495 U.S. 411, 110 S. Ct. 1979, 109 L. Ed. 2d 408 (1990), forbids restitution for conduct occurring outside of the statute of limitations. Hughey involved the application of the MVRA's discretionary counterpart, the Victim and Witness Protection Act of 1982 (the "VWPA"), Pub. L. No. 97-291, 96 Stat. 1248, codified at 18 U.S.C. §§ 3663 and 3664.[13] The defendant was indicted

---

[13] At the time of Hughey's sentencing, the VWPA was codified at 18 U.S.C. §§ 3579 and 3580. Congress recodified the VWPA as §§ 3663 and 3664 through the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987. The salient portions of § 3663 in its current form read as follows:

> (a) (1) (A) The court, when sentencing a defendant convicted of an offense under this title, section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863) (but in no case shall a participant in an offense under such sections be considered a victim of such offense under this section), or section 46312, 46502, or 46504 of title 49, other than an offense described in section 3663A(c), may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate. The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.
> (B) (i) The court, in determining whether to order restitution under this section, shall consider—
>> (I) the amount of the loss sustained by each victim as a result of the offense; and

on three counts of theft by a United States Postal Service employee and three counts of unauthorized credit card use. Id. at 413, 110 S. Ct. at 1981. Through a plea agreement, he pled guilty to only one count, the unauthorized use of a single credit card. Id. at 413-14, 110 S. Ct. at 1981. The district court ordered him to pay restitution for losses resulting from his theft and use of nearly thirty other credit cards, for which he was not convicted. Id. at 414, 110 S. Ct. at 1981-82. The Supreme Court reversed. Section 3663, the Court observed, "provide[d] that 'a defendant convicted of an offense' [could] be ordered to 'make restitution to

---

(II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.
(ii) To the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order.
(2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.
(3) The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement.
. . .
(d) An order of restitution made pursuant to this section shall be issued and enforced in accordance with section 3664.

13

any victim of such offense.'" Id. at 415-16, 110 S. Ct. at 1982.  The term "such offense," the Court concluded, referred to the "offense of conviction."  Id. at 416, 110 S. Ct. at 1982.  Thus, the Court held that § 3663 "authorize[d] an award of restitution only for the loss caused by the specific conduct that [was] the basis of the offense of conviction."  Id. at 413, 110 S. Ct. at 1981.

In our view, the restitution order in this case does not run afoul of Hughey.  At the outset, we note that the Hughey Court rested its judgment upon the language of § 3663; § 3663A, created in 1996 by the MVRA, did not yet exist.  More important, though, is the fact that the Court decided Hughey before Congress amended § 3663 through the Crime Control Act of 1990 (the "CCA"), Pub. L. No. 101-647, 104 Stat. 4789.  As amended, § 3663 states:

> (a) (1) (A) The court, when sentencing a defendant convicted of an offense under [title 18], section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863) (but in no case shall a participant in an offense under such sections be considered a victim of such offense under this section), or section 46312, 46502, or 46504 of title 49, other than an offense described in section 3663A(c), may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate.
>
> . . .
>
> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an

14

offense for which restitution may be ordered <u>including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern</u> . . . .

(emphasis added).

Thus, the <u>Hughey</u> Court had no opportunity to interpret § 3663's definition of "victim," which is identical to the one in § 3663A, the controlling statute in this case.[14]  <u>See</u> <u>United States v. Boyd</u>, 222 F.3d 47, 51 (2d Cir. 2000) (stating that the definitions of "victim" in §§ 3663 and 3663A are "identical").  We therefore begin by discussing the extent to which the rule in <u>Hughey</u> survives the CCA and the MVRA in crimes involving schemes.  Because §§ 3663 and 3663A define

---

[14]Even if this definition were in effect at the time of <u>Hughey</u>, it does not appear that the Supreme Court would have had the opportunity to rule on it.  Hughey pled guilty to the unauthorized use of a single credit card.  495 U.S. at 410, 110 S. Ct. at 1981.  Such activity is prohibited by 15 U.S.C. § 1644(a), which states:

> Whoever knowingly in a transaction affecting interstate or foreign commerce, uses or attempts or conspires to use any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain money, goods, services, or anything else of value which within any one-year period has a value aggregating $1,000 or more . . . . shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

The crime for which Hughey was convicted was not prohibited by a statute to which § 3663 applies and did not involve as an element a scheme to defraud.  <u>See</u> <u>United States v. Bennett</u>, 943 F.2d 738, 740 n.1 (7th Cir. 1991) ("[I]n <u>Hughey</u> the government was required to prove an intent to defraud in convicting Hughey of unauthorized use of a credit card.  The offense did not, however, require proof of a scheme to defraud, and thus, the evidence of other credit card thefts was not conduct forming the basis of the conviction.").  Thus, the present version of 18 U.S.C. § 3663(a)(2) would not have applied in <u>Hughey</u>.

15

"victim" in precisely the same way, we look to cases interpreting either statute. See United States v. Akande, 200 F.3d 136, 140 (3d Cir. 1999) (noting that the definition of "victim" is "virtually identical" in §§ 3663 and 3663A, and that "the case law that construes either section" is largely interchangeable in this respect).

The courts have held that by defining "victim" expansively in scheme-based crimes, Congress "partially overrul[ed] Hughey's restrictive interpretation of the VWPA and expand[ed] district courts' authority to grant restitution." United States v. Henoud, 81 F.3d 484, 488 (4th Cir. 1996). We consider three categories of cases, those concerning the compensable victims, punishable acts, and temporal limitations of restitution.

First, the courts have held that restitution may be ordered to a victim not named in the indictment, provided that the victim was "directly harmed by the defendant's criminal conduct in the course of a scheme or conspiracy." Henoud, 81 F.3d at 489; see United States v. Pepper, 51 F.3d 469, 473 (5th Cir. 1995) (affirming an order of restitution to a group of investors harmed by the defendant's fraudulent marketing scheme, but not named in the indictment); United States v. Upton, 91 F.3d 677, 686 (5th Cir. 1996) (acknowledging Pepper, but denying restitution to materialmen and suppliers who were "not victims of the scheme alleged in the indictment," i.e., conspiracy to defraud and presenting false claims

16

to the United States in roofing contracts (emphasis added)).  Consistent with this rule, the court in United States v. Kones, 77 F.3d 66, 70 (3d Cir. 1996), observed that

> where a defendant is convicted of defrauding person X and a fraudulent scheme is an element of that conviction, the sentencing court has power to order restitution for the loss to defrauded person Y directly caused by the defendant's criminal conduct, even where the defendant is not convicted of defrauding Y.

In such cases, "the harm to the victim must be closely related to the scheme, rather than tangentially linked."  Id.

Second, the courts have held that "when the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense," the court may order restitution for "acts of related conduct for which the defendant was not convicted," United States v. Lawrence, 189 F.3d 838, 846 (9th Cir. 1999), at least when such conduct occurred within the statute of limitations.[15]  Thus, the Lawrence court ordered the defendant, convicted of mail and bankruptcy fraud, to pay the full amount of restitution ordered by the district court, even though only a fraction of the amount "[was] directly attributable to the acts for which the jury found [him] guilty."  Id. at 847.  Our cases have followed this line of reasoning.

---

[15]These cases do not directly address the statute of limitations issue we face today, and it is unclear whether they extend to permit restitution for conduct outside of the statute of limitations.  As the parties agree, this is an issue of first impression in our circuit.

17

See United States v. Hasson, 333 F.3d 1264, 1276 n.13 (11th Cir. 2003) (noting that the Crime Control Act and the MVRA "supersede[d] our interpretation of § 3663(a) in United States v. Stone, 948 F.2d 700, 704 (11th Cir. 1991), that restitution for mail or wire fraud is limited to the specific act of fraud underlying the mailing or use of the wires for which the defendant is convicted, rather than the entire scheme or artifice to defraud furthered by the mailing or use of the wires."); cf. United States v. Obasohan, 73 F.3d 309, 311 (11th Cir. 1996) ("[A] district court does not exceed its authority by ordering a defendant to pay restitution for losses which result from acts done in furtherance of the conspiracy of which the defendant is convicted."). Other courts have reached similar results. See United States v. Hensley, 91 F.3d 274, 277 (1st Cir. 1996) ("[T]he outer limits of a VWPA § 3663(a)(2) restitution order encompass all direct harm from the criminal conduct of the defendant which was within any scheme, conspiracy, or pattern of activity than was an element of any offense of conviction."); cf. United States v. Boyd, 222 F.3d 47, 50 (2d Cir. 2000) ("The MVRA definition of 'victim' traces verbatim the amended language of the [VWPA], which courts have uniformly read to provide for restitution payable by all convicted co-conspirators in respect of damage suffered by all victims of a conspiracy, regardless of the facts underlying counts of conviction in individual prosecutions.").

The third category of cases, dealing with the temporal limits of restitution, places some limitations on the reach of §§ 3663A(a)(2) and 3663(a)(2).[16] These cases do not make a fortress of Hughey, however.

In United States v. Hughey, 147 F.3d 423 (5th Cir. 1998) ("Hughey II"), the defendant was convicted on several counts, including bank fraud. The district court ordered him to pay restitution to various banks. Id. at 436. The Fifth Circuit reversed the restitution order as to two of those banks. Id. at 438. Recognizing the effect of the Crime Control Act of 1990 upon § 3663, the court nonetheless held that "[t]hat part of [the Supreme Court's opinion in] Hughey which restricted the award of restitution to the limits of the offense . . . still stands." Id. at 437. The court noted that the indictment, returned in July 1995, charged Hughey with a scheme running from April through September of 1993, but that some of the losses

_____

[16]In this category, the Government urges upon us the Fifth Circuit's decision in United States v. All-Star Industries, 962 F.2d 465 (5th Cir. 1992), rev'd on other grounds, United States v. Calverley, 37 F.3d 160 (5th Cir. 1994) (en banc). In All-Star, the district court ordered the defendant to pay restitution for conspiracy to violate the antitrust laws. Id. at 476. The defendant appealed, claiming that the statute of limitations barred restitution for losses occurring more than five years before the indictment. Id. The court upheld the restitution order. Id. at 477. It reasoned that because the defendant was "convicted of participating in a single continuing conspiracy that began more than five years before the indictment was returned, but which did not end until . . . a time within" the statute of limitations, it was proper to order restitution in the full amount of the victims' losses. Id. We decline to extend All-Star to the instant case, not merely because it involved a criminal conspiracy, but since it arose out of an order of restitution under the now-repealed Probation Act. See id. at 476-78 & n.22. Nowhere in its analysis of the challenged restitution order does the All-Star court discuss Hughey's impact upon the VWPA or the statutory definition of "victim" at issue in this case.

19

included in the restitution order occurred before that time.  Id. at 438.  Since those

losses "[fell] outside the offense as defined in the indictment, and the trial record

[did] not otherwise tie those losses to Hughey's fraudulent scheme," the court

excluded them from the restitution order.  Id.  In its view, such losses were "in

excess of those amounts attributable to the conduct made the basis of Hughey's

conviction," and therefore, at odds with the Supreme Court's Hughey decision.  Id.

In United States v. Akande, 200 F.3d 136 (3d Cir. 1999), the defendant,

pursuant to a plea agreement, pled guilty to conspiracy to commit credit card

fraud.  The conspiracy, according to the information, plea agreement and colloquy,

lasted from December 1997 to July 1998.  Id. at 138.  The district court ordered

Akande to pay a sum of restitution that accounted for two acts of fraud before

December 1997.  Id.  The Third Circuit reversed, holding that

> the "offense of conviction" as defined by [the Supreme Court's
> opinion in Hughey] remains the reference point for classifying
> conduct that determines liability for restitution.  Although the [CCA]
> expanded the breadth of the definition of victims, the text did not
> extend the length of the period attributable to the offense of
> conviction . . . . [T]he offense of conviction is temporally defined by
> the period specified in the indictment or information.

Id. at 141.  Because conduct occurring before December 1997 "[was] not

mentioned in the Information or during the plea colloquy," the court excluded

from the restitution order the victim's losses from that conduct.  Id. at 143.

Taken together, Hughey and Akande do not severely restrict the reach of the CCA and the MVRA. Both cases suggest that a district court may not order a defendant to pay restitution for criminal conduct unrelated to the offense of conviction, i.e., conduct not alleged in the indictment, specified in the plea agreement, or otherwise made a part of the record. We read these cases narrowly for the proposition that even after the CCA and the MVRA, a criminal defendant cannot be compelled to pay restitution for conduct committed outside of the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction.[17] To the extent that these cases say anything more, we reject them.

B.

Our brief survey of the law shows that the CCA and the MVRA all but eviscerated Hughey with respect to crimes involving schemes. In light of this

[17]This reasoning is consistent with the Seventh Circuit's holding in United States v. Brothers, 955 F.2d 493 (7th Cir. 1992), decided before the CCA or the MVRA took effect. Brothers was convicted of three counts of mail fraud and three counts of making false statements to the United States Department of Labor. Id. at 494. The indictment alleged that between 1972 and 1989, Brothers engaged in a unitary scheme to defraud the United States of worker's compensation benefits. Id. at 497. The district court ordered Brothers to pay restitution for all of the benefits he received throughout this period, and the Seventh Circuit affirmed. Id. at 498. Recognizing Hughey as binding precedent, the court nonetheless held that "because proof of a scheme is an element of the offense of mail fraud . . . actions pursuant to that scheme should be considered conduct that is the basis of the offense of conviction." Id. at 497 (marks and citations omitted). Citing Brothers, the Fifth Circuit adopted this same approach in United States v. Stouffer, 986 F.2d 916, 928-29 (5th Cir. 1993). Whatever the wisdom of this reasoning, we need not apply it here. We base our judgment upon the identical definitions of "victim" found in §§ 3663 and 3663A.

21

observation, we must consider whether we should hold that a district court may order restitution for all losses resulting from a common scheme, even those caused by conduct occurring outside of the statute of limitations.

Although there is a dearth of authority on this question, we find useful the Eighth Circuit's opinion in United States v. Welsand, 23 F.3d 205 (8th Cir. 1994). In Welsand, the defendant concealed his employment and assets in order to qualify for a pension from the United States Veterans Administration, now the Department of Veterans Affairs ("VA"). Id. at 206. The VA paid Welsand's pension from 1981 through 1991 in reliance on his misrepresentations. Id. Welsand was thereafter convicted, among other things, on three counts of mail fraud. Id. The district court ordered him to pay restitution for the entire amount he received from the VA from 1981 to 1991. Id. Welsand argued on appeal that he was liable only for the pension payments corresponding to the three counts of mail fraud for which he was convicted. Id. Recognizing that "some of the acts constituting [the] mail fraud scheme antedate[d] the indictment by more than eleven years," id. at 206, the Eighth Circuit nonetheless affirmed the restitution order. The court based its ruling on the fact that "Welsand's interrelated acts [pursuant to the overarching fraudulent scheme] constituted the 'conduct underlying the offenses of conviction'" under Hughey. Id. at 207. Put another

way, the court determined that the "'"offense' described in each count of Welsand's indictment reache[d] out to include all acts encompassed within the 'scheme or artifice to defraud' described in" the mail fraud statute. Id.

Although the Welsand court did not explain its reasoning in great detail,[18] we agree with the result it reached and affirm the restitution order here. The district court's restitution order squares with our precedent. We decided in another context that a district court may consider conduct occurring outside of the statute of limitations in sentencing. In United States v. Behr, 93 F.3d 764 (11th Cir. 1996), the defendant, an insurance agent, defrauded pension fund investors by taking their money for his own personal use. Behr's insurance company lost over $300,000 as a result of his "overall activities involving thefts, verbal misrepresentations, and unauthorized withdrawals from clients' accounts." Id. at 765. Behr pled guilty to one count of wire fraud. Id. at 764. In committing this single offense, he caused only $12,000 of loss. Id. at 765. Nonetheless, in the

---

[18]The approach the Eighth Circuit took in this brief opinion appears to mirror the one set forth in Brothers and Stouffer. See supra note 17. The CCA governed only in Welsand, however. Compare Welsand, 23 F.3d at 207 (noting that the 1990 amendments to the VWPA applied to the challenged restitution order), with Stouffer, 986 F.2d at 929 n.19 ("[W]e do not rely upon Congress' 1990 amendment to the VWPA due to ex post facto concerns"), and Brothers, 955 F.2d at 496 n.1 ("The [VWPA] was amended after Brothers was sentenced by the Crime Control Act of 1990"). Although the courts in Stouffer, 986 F.2d at 929 n.19, and Brothers, 955 F.2d at 497 n.3, stated that their rulings were harmonious with the CCA, both statements were dicta.

PSI, the probation officer identified the $300,000 sum as "relevant conduct" under the United States Sentencing Guidelines, and recommended that the district court increase Behr's offense level by eight levels. Id. "At the sentencing hearing, Behr admitted to all the facts contained in the PSI, including the probation officer's description of his relevant conduct." Id. But he also claimed that the court should not consider his company's $300,000 loss, since the conduct that caused this loss was outside of the statute of limitations. Id. The district court rejected Behr's argument and enhanced his sentence according to the probation officer's recommendation. Id. We affirmed, noting that "the five Circuits that [had addressed the issue] all held that the district court may consider criminal conduct that occurred outside of the statute of limitations period as relevant conduct for sentencing purposes." Id. at 765-66.

We conclude that the reasoning in Behr applies with equal force to the case at hand. If a district court may consider relevant conduct occurring outside of the statute of limitations in determining the offense level (and, indirectly, the range of possible sentences), we fail to see what precludes it from considering such conduct in fashioning a restitution order. Therefore, we hold that where a defendant is convicted of a crime of which a scheme is an element, the district court must, under 18 U.S.C. § 3663A, order the defendant to pay restitution to all victims for

24

the losses they suffered from the defendant's conduct in the course of the scheme, even where such losses were caused by conduct outside of the statute of limitations.[19]  The district court must find that the victims' losses resulted "directly" from the defendant's criminal conduct in the course of the scheme.  The "harm to the victim [must be] closely related to the scheme, rather than tangentially linked."  Kones, 77 F.3d at 70; see United States v. Brothers, 955 F.2d 493, 497 (7th Cir. 1992) ("[T]he indictment specifically defined the fraud scheme in this case.  There is thus no risk that the restitution order was based upon broad, unsubstantiated conduct." (marks and citations omitted)).

C.

Applying our rule to the facts of this case, we find no error in the district court's restitution order.  The indictment to which Dickerson pled guilty alleged that he pursued a unitary scheme to defraud the SSA between September 1996 and June 2000.  According to the PSI, Dickerson (1) began work in September 1996, (2) received disability benefits from November 1996 to June 2000, and (3) failed ever to notify the Administration of his work status.  The PSI specified the dates

---

[19]We suspect that our rule applies similarly to cases (1) proceeding under § 3663, and (2) arising from crimes that involve as an element a conspiracy or pattern of criminal conduct.  We need not decide this today, however.  We cabin our rule to scheme-based crimes for which restitution is mandatory under § 3663A.

25

and amounts of every transfer of funds he received in the course of his common scheme. This included the transfers made between November 1996 and June 1997, which were beyond the statute of limitations. With the parties' agreement, the court adopted the information contained in the PSI as its findings of fact.[20] It therefore implicitly found that Dickerson procured the entire $44,178.40 sum in the course of a common scheme to defraud the SSA, and properly ordered him to pay full restitution.

The judgment of the district court is accordingly

AFFIRMED.

---

[20]At the sentencing hearing, Dickerson's counsel protested that the restitution order was inconsistent with her client's guilty plea. She argued that by ordering restitution for conduct occurring outside of the statute of limitations, the court effectively construed her client to have pled guilty to such conduct. We disagree. Counsel confuses the separate issues of conviction and restitution. It is beyond debate that Dickerson could not be charged or convicted of wire fraud occurring before July 1997. But as we conclude, the statutory framework permits restitution for all conduct in the course of a unitary scheme.