[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15953
_____

D.C. Docket No. 3:09-cr-00004-RLV-GGB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFREY WALLACE EDWARDS,
a.k.a. J.W. Edwards,
FRONTIER HOLDINGS, INC.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 6, 2013)

Before PRYOR and COX, Circuit Judges and WALTER,[*] District Judge.

COX, Circuit Judge:

_____

[*] Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

Jeffrey W. Edwards and Frontier Holdings Inc.[1] (collectively "Defendants") were convicted of wire fraud, mail fraud, and money laundering, all offenses arising out of a high yield investment scheme. In the scheme, Edwards solicited funds from investors by promising astronomical returns and then used the funds for extravagant personal expenditures. At sentencing, the district court ordered Edwards to pay the victims over six million dollars in restitution pursuant to the Mandatory Victims Restitution Act. 18 U.S.C. § 3663A. The Defendants appeal and contend that the district court erred in the court's restitution order by: 1) not considering Edwards's financial situation, 2) ordering restitution based on dismissed counts, 3) ordering restitution for an unrelated real estate investment scheme, and 4) ordering restitution without evidence showing Edwards injured the alleged victims.

## I. FACTS AND PROCEDURAL HISTORY

### A. Defendants' High Yield Investment Scheme

Edwards found potential victims through investment conferences or by referrals from other victim-investors. Edwards utilized a variety of misrepresentations to encourage potential victims to invest in his scheme. He

---

[1] Frontier Holdings Inc. is a Georgia corporation. Edwards is the CEO of Frontier Holdings and controls its decisions and operations. Edwards offered his high yield investment scheme through Frontier Holdings and used several bank accounts belonging to Frontier Holdings. While Frontier Holdings was not ordered to pay restitution, the defense makes no differentiation between the two defendants and both defendants challenge on appeal all issues.

2

promised victims that the high yield program produced returns ranging from 75% to 800%. He also lied about his background. He told one victim that he owned five banks. Another was told that he owned the First National Bank of Georgia. A number of victims were told that he owned large tracts of land in Georgia and handled millions of dollars in investment funds. At other times, Edwards told victims that he was an agent of the Federal Reserve and a friend of then-Vice-President Dick Cheney.

Edwards did not explain how the high yield investment program worked, but told victims that this was a special investment opportunity reserved for high net worth individuals. Despite these restrictions, Edwards assured victims that he could allow multiple small investors to pool their money and access these investments through his banking connections. At times, Edwards represented that the investment worked by depositing money into special high interest Federal Reserve accounts. At other times, Edwards asserted that the investment capitalized on "fads" at the International Monetary Fund. Despite the high returns, Edwards told victims that the high yield program was completely risk-free. According to Edwards, the money was only pledged; so, the victims' money would never leave the bank he owned.

These misrepresentations enticed victims to send the Defendants money. Victims were normally asked to wire money directly to the Defendants' accounts.

After receiving the victims' money, Edwards did not invest it as promised. Rather, he used the money for extravagant personal expenditures including houses, cars, and cruises. Whenever victims attempted to withdraw money, Edwards assured them that the investment was producing returns, but provided excuses for why the money was not immediately available. Eventually, Edwards stopped communicating with the victims.

The Defendants were indicted by a federal grand jury on six counts of mail fraud (counts 1-6), twenty counts of wire fraud (counts 7-26), and eleven counts of money laundering (counts 27-37). (Dkt. 127.) After the close of evidence at trial, the district court granted the Government's motion to dismiss counts 3, 4, and 5, and the Defendants' motion to dismiss counts 1, 12, 18, and 25. (Dkt. 239 at 1.) The court denied the Defendants' motion to dismiss counts 2, 6, 7-11, 14-17, 19, 21-24, and 26. The jury convicted the Defendants on two counts of mail fraud (counts 2 and 6), seventeen counts of wire fraud (counts 7–11, 13–17, 19–24, and 26), and eleven counts of money laundering based on a high yield investment scheme (counts 27–37). (Dkt. 242, 243.)

**B. The Post-Trial Restitution Order**

The probation officer filed a presentence report proposing Edwards pay $6,820,620.05 in restitution to the Defendants' victims. Edwards objected to the presentence report and moved the court to bar consideration of all alleged victims

4

who did not testify at trial. (Dkt. 266.) Particularly relevant to this appeal, the report proposed $850,000 in restitution to the Heavenly Abundance Foundation owned by Teana Reese [sic] and $1,635,000 in restitution to Camencita Jocson. (PSI at ¶ 65.) The proposed restitution for Jocson consisted of $675,000 sent to Edwards's personal account for investment in the high yield program and $960,000 sent to an account belonging to Edwards's company, Grandview LLC. Jocson was persuaded to send $960,000 to the Grandview account because Edwards told her it would be used to earn "rich rewards" through real estate investment. Edwards opened the Grandview account on June 21, and Jocson wired the $960,000 five days later. Over the next two and a half weeks, Edwards transferred the money into his personal account. Edwards then spent the money on personal expenditures, not investments.

At the sentencing hearing, Edwards objected to restitution for Jocson, victims who did not testify, and victims whose related counts were dismissed at trial. Edwards also asked the court to consider his dependents and financial situation when calculating restitution. At the conclusion of sentencing, Edwards was sentenced to 108 months, (Dkt. 271 at 2,) and Frontier Holdings was placed on probation for one year. (Dkt. 272 at 2.) The district court said that a restitution order would be entered later.

Ninety-one days later, the district court ordered Edwards to pay $6,820,620.05 in restitution to various victims. (Dkt. 311.) Frontier Holdings was not required to pay restitution. (Dkt. 272 at 2.) Edwards moved to vacate the restitution order on four grounds and requested a hearing. (Dkt. 315.) First, Edwards argued the court improperly considered facts outside the record in determining restitution. Second, he asserted the court should have considered his finances in determining restitution. Third, Edwards argued that the court wrongfully transferred the restitution proposed for Reece to the Caldwells, Colovin, Freeman, Perry, and Wilson (who were allegedly Reece's victims). Fourth, Edwards argued the court wrongfully ordered restitution for the victims whose related counts were dismissed at trial.

The court denied Edwards's motion. (Dkt. 333.) The court held that it did not need to consider Edwards's finances to determine the amount of restitution and properly ordered restitution for victims whose related counts were dismissed at trial. The court also held that the transfer of the $850,000 in restitution from Reece to the Caldwells, Colovin, Freeman, Perry, and Wilson was appropriate since Edwards never objected to the proposed restitution to Reece in the presentence report. No evidence in the record shows why the restitution was changed from Reece to these individuals.

According to the Government, shortly before sentencing the Government learned that Reece was not a victim, but a co-conspirator in the fraud. (Red Br. at 55.) Allegedly, Reece solicited money from her victims and then transferred it to the Defendants. Thus, on the eve of sentencing, the probation officer proposed that the district court change the restitution order to prevent Reece from receiving an unjust windfall. These events were never related to the Defendant. The Government concedes that no evidence in the record supports this change in restitution. (Red. Br. at 58.)

## II. ISSUES PRESENTED

The Defendants present ten issues on appeal. After careful consideration of the briefs, the record, and with the benefit of oral argument, we conclude that only the four issues relating to restitution merit discussion. In addition to the four issues, the Defendants contend that the district court erred by: denying a motion to depose Dr. Moor; denying a motion to sever counts relating to Dr. Moor; and denying a motion for a judgment of acquittal on counts 6, 7, 10, 11, 13, 17, 20, 21, 23, and 26. We conclude there is no merit in these contentions and do not address them further in this opinion.

Of the four restitution issues, first, the Defendants contend that the district court should have considered Edwards's financial situation to determine the amount of restitution. Second, the Defendants argue that the district court erred by

7

granting restitution to victims when the counts related to their injuries were dismissed at trial. Third, the Defendants assert that the district court erred by ordering restitution to Jocson for losses caused by an unrelated real estate investment scheme. Fourth, the Defendants contend that the district court lacked sufficient evidence to order restitution for the Caldwells, Colovin, Freeman, Perry, and Wilson.

## III. STANDARDS OF REVIEW

This case implicates two standards of review. "This Court reviews *de novo* the legality of a restitution order, but reviews for clear error the factual findings underpinning a restitution order." *United States v. Brown*, 665 F.3d 1239, 1252 (11th Cir. 2011).

## IV. DISCUSSION

A district court has authority to order restitution only as authorized by statute. The Mandatory Victim Restitution Act ("MVRA") requires the district court to grant restitution to all victims once a defendant is convicted of "any offense… in which an identifiable victim or victims has suffered a… pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B); *see also United States v. Robertson*, 493 F.3d 1322, 1329 (11th Cir. 2007) ("Under the Restitution Act, defendants convicted of wire or mail fraud must make restitution to any 'victim' of their offenses."). To

order restitution under the MVRA, courts are required to follow the procedures in 18 U.S.C. § 3664.  18 U.S.C. § 3663A(d).

Both Edwards and Frontier Holdings appeal the restitution order.  But, only Edwards was ordered to pay restitution and Frontier Holdings makes no argument about why it should be allowed to challenge the restitution order.  Thus, we conclude that Frontier Holdings does not have a sufficient injury for standing to challenge the restitution order, and we only address Edwards's arguments challenging the restitution order.  *See United States v. Hays*, 515 U.S. 737, 742 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines.").

### A. The district court correctly ignored Edwards's finances when determining the amount of restitution.

Edwards contends that the district court was required to consider Edwards's financial resources before determining the amount of restitution owed his victims. The Government responds that the district court not only was not required to consider Edwards's financial resources, but was prohibited by the MVRA from considering his financial resources.  Because Edwards's argument challenges the legality of the restitution order, we review the district court's procedures *de novo*. *Brown*, 665 F.3d at 1252.

9

The MVRA creates a two-step process for determining the amount and schedule of restitution payments. First, a district court determines "the full amount of each victim's losses… without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3663A(f)(1)(A). At this first stage, the district court lacks "any discretion to contemplate the defendant's financial situation." *United States v. Jones*, 289 F.3d 1260, 1265 (11th Cir. 2002).

Second, after the district court establishes the total amount of restitution owed, the district court considers the defendant's financial resources to create a schedule for restitution payments. 18 U.S.C. § 3663A(f)(2). At this second stage, the court should consider the defendant's finances. However, even then, the defendant bears the burden of demonstrating his financial condition, and the court can rely on the probation report and need not make independent findings. *See Jones*, 289 F.3d at 1266 (holding that a district court can rely on the probation report and is not required to make independent findings regarding the defendant's financial resources).

In contrast to Edwards's contention, the MVRA expressly prohibits consideration of his financial resources when determining the amount of restitution. Edwards's reliance on our prior decisions in *United States v. Satterfield*, 743 F.2d 827 (11th Cir. 1984), and *United States v. Page*, 69 F.3d 482, 493 (11th Cir. 1995), is misplaced. These cases interpret the Victim and Witness

Protection Act of 1982 ("VWPA") which, as we have previously explained, was amended in 1996 by the MVRA. *United States v. Thayer*, 204 F.3d 1352, 1357 (11th Cir. 2000). While the VWPA gave the court discretion in determining how much restitution to order, the MVRA requires a court to grant the "full amount of restitution."[2] 18 U.S.C. § 3664(f)(1)(A); *Thayer*, 204 F.3d at 1357.

Accordingly, we hold that the district court did not err in determining the full amount of restitution without considering Edwards's financial resources.

**B. The district court did not clearly err by ordering restitution to Jocson for losses caused by a related scheme.**

Edwards contends that he cannot be required to pay restitution to Jocson for the money she transferred to Grandview LLC's account (the "Grandview Transaction"). According to Edwards, this was a separate real estate investment transaction unrelated to the scheme charged in the indictment. The Government responds that this issue has not been preserved for appeal and, even if preserved, that the Grandview Transaction is related to the common scheme.

We conclude that this issue was properly preserved for appeal.[3] We must determine whether the district court clearly erred by finding that the Grandview

---

[2] To the extent they require a court to consider a defendant's financial resources before determining the amount of restitution, *United States v. Scatterfield* and *United States v. Page* have been abrogated by statute.

[3] Edwards preserved this argument for appeal by objecting during the sentencing hearing. At the hearing, Edwards argued that "Ms. Jocson invested into a Grandview LLC, which was a real estate development company. Has nothing to do with quote the high yield program that was

11

Transaction was related to the offenses resulting in convictions. We review for clear error a district court's determination that a transaction was sufficiently related to an offense resulting in convictions. *See United States v. Valladares*, 544 F.3d 1257, 1270 (11th Cir. 2008) (applying clear error review to the district court's determination that an injury was related).

As a threshold matter, Edwards incorrectly relies on the Supreme Court's decision in *United States v. Hughey*, 495 U.S. 411 (1990), for the proposition that restitution may only be ordered for an offense resulting in conviction. As we have previously explained, the enactment of "the MVRA all but eviscerated *Hughey* with respect to crimes involving schemes." *United States v. Dickerson*, 370 F.3d 1330, 1341 (11th Cir. 2004). In *Dickerson*, we observed that the definition of "victim" used for the MVRA was expanded after the *Hughey* decision to include, "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern…." 18 U.S.C. § 3663A(a)(2). We joined our sister circuits in holding "that by defining 'victim' expansively in scheme-based crimes, Congress partially overrul[ed] *Hughey*'s

the basis of the indictment… Nothing in the record there is any misrepresentation in connection with the Grandview LLC. There is nothing in there that any losses were not just from the economic downturn."

12

restrictive interpretation of the VWPA and expand[ed] district courts' authority to grant restitution." *Dickerson*, 370 F.3d at 1338 (citations omitted).

We have repeatedly "rejected attempts to narrow the scope of 'victim' under the statute." *See Brown*, 665 F.3d at 1253. We reject Edwards's similar attempts in this case. Thus, "when the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, the court may order restitution for acts of related conduct for which the defendant was not convicted." *Dickerson*, 370 F.3d at 1339; *see also Brown*, 665 F.3d at 1252 ("Courts have agreed that, in light of the expanded statutory language, restitution orders for conduct closely related to the offense of conviction are appropriate under either § 3663 or § 3663A(a)(2), in addition to the specific conduct for which the defendant was convicted.").

Turning to the district court's decision, we consider whether the district court clearly erred by finding that the Grandview Transaction was related to the scheme that resulted in convictions. *See Dickerson*, 370 F.3d at 1339 (citing *United States v. Hensley*, 91 F.3d 274, 277 (1st Cir. 1996), for the proposition that "the outer limits of a VWPA § 3663(a)(2) restitution order encompass all direct harm from the criminal conduct of the defendant which was within any scheme, conspiracy, or pattern of activity that was an element of any offense of conviction."). Although the record is vague, the district court's decision is not

13

clearly erroneous.   The record shows that Edwards enticed Jocson to transfer money into the Grandview account by misrepresenting that he would use the money for profitable real estate investments.  Instead of using the money to invest in real estate, Edwards transferred the money out of the Grandview account and into his personal account to be used for personal expenditures.

Based on this evidence, the district court could find that the Grandview Transaction was a related scheme.  Like the offenses for which Edwards was convicted, he presented a false investment opportunity to Jocson by misrepresenting that the money would be invested.  As in the scheme resulting in convictions, Edwards enticed Jocson to invest by promising profitable returns.  Additionally, the course of misappropriation is nearly identical to the offenses resulting in convictions.  Edwards told Jocson to transfer the money into a bank account belonging to a company he owned.  He then transferred the money into his personal account—the same account that held the proceeds of his other fraudulent schemes.

The only significant difference between the transactions resulting in convictions and the Grandview Transaction is that in one case Edwards falsely promised to invest in various financial instruments and in the other he falsely promised to invest in real estate.  Edwards's use of somewhat different lies to accomplish both frauds does not show a separate, unrelated scheme or pattern of

14

criminal activity.    In fact, even among the offenses of conviction, Edwards routinely used different representations to solicit victims.

Furthermore, our prior precedent considering whether a scheme was sufficiently related for restitution suggests that the Grandview Transaction is related.    While we do not appear to have defined a test for relatedness, we have considered whether the victim and purpose of each scheme were the same, whether the schemes involved the same *modus operandi*, and whether the schemes involved common participants.    *See Valladares*, 544 F.3d at 1268.    In *Valladares*, the defendant was convicted of providing pharmacies with prescriptions that the defendant obtained by bribing patients and doctors.    *Id.* at 1261.    The pharmacies would then submit fraudulent Medicare claims based on the prescriptions and pay the defendant kickbacks.    Although not charged in the indictment, the government provided evidence that the defendant also operated a scheme of submitting fraudulent Medicare claims for medical equipment through her company.    *Id.* Even though the two schemes were different both in the type of claims submitted for reimbursement and the means used, we held that the district court did not err in determining they were related because the schemes involved the same victim, purpose, *modus operandi*, and participants.    *Id.* at 1268.

The same considerations are relevant in this case.    *See Brown*, 665 F.3d at 1253 (using the victim and purpose factors from *Vallardares* to determine a

15

scheme was related).  Jocson was a victim both in the transactions resulting in convictions and  the Grandview Transaction.  The purpose of both transactions was to fraudulently obtain funds that Edwards could use for personal expenditures.  Edwards used the same *modus operandi* of fraudulently soliciting investments with promises of profit, asking investors to transfer money to an account, misappropriating the money to his personal account, and spending the money on personal expenditures instead of investing it as promised.  Finally, in both transactions Edwards was a common participant.

Accordingly, we hold that the district court did not clearly err by finding the Grandview Transaction related to the scheme.

### C. The district court properly found that Edwards owed restitution to victims whose related counts were dismissed at trial.

Edwards contends that the district court erred by ordering restitution to victims when the counts related to their injuries were dismissed at trial.  Edwards seems to assert that since these counts were dismissed, the district court never found that Edwards injured these victims.  The Government responds that the district court did make findings in the restitution order.  Edwards fails to note which recipients of restitution fall into this category, but does refer to dismissed counts 1, 12, 18, and 25—which concern Mr. Hulis, Mr. and Mrs. Holyk, and Ms. Lara.  The court did not order Edwards to pay Hulis restitution; thus, we only consider whether the district court made sufficient findings for the Holyks and

16

Lara. Because this argument challenges the legality of the restitution order, and not the factual basis underlying any finding of harm, we review *de novo*.[4]

In ordering restitution, a district court must make specific findings that the alleged victim was harmed by the defendant. *United States v. Singletary*, 649 F.3d 1212, 1222 (11th Cir. 2011). Contrary to Edwards's contention, the district court did find that the Holyks and Lara were harmed. In the restitution order, the court found that both the Holyks and Lara were victims suffering damages of $75,000 and $106,000 respectively.

Furthermore, as already discussed, the lack of a conviction does not automatically preclude the district court from finding an injury sufficient to order restitution. While a conviction is required to trigger restitution under the MVRA, once the defendant is convicted, a "court may order restitution for acts of related conduct for which the defendant was not convicted." *Dickerson*, 370 F.3d at 1339. Thus, lack of a conviction does not automatically prevent the district court from finding an injury sufficient for restitution so long as the injury is related to an offense of which the defendant was convicted.

---

[4] Because the defendant only challenges the existence of any findings, we do not address the factual support for the district court's findings. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Accordingly, we hold that the district court made sufficient findings to support the order that the Holyks and Lara were victims entitled to restitution.

### D. Insufficient evidence supports the restitution order to Reece's Alleged Victims.

Fourth, Edwards contends that the district court erred by ordering restitution to the Caldwells, Colovin, Freeman, Perry, and Wilson (collectively "Reece's Alleged Victims") because the Government failed to provide any evidence that Edwards harmed these individuals. As previously mentioned, the probation officer proposed a change in restitution from Reece to Reece's Alleged Victims on the night before sentencing after determining that Reece was a co-conspirator, not a victim. The Government admits that it did not follow proper procedures to substantiate restitution for these individuals, but argues the restitution order should stand under a plain error standard of review because Edwards failed to preserve this argument.

The Government contends that Edwards failed to preserve this issue for appeal because he did not object to the presentence report's $850,000 recommended restitution for Reece and did not object to the restitution for Reece's Alleged Victims until after the restitution order was issued. Edwards responds that he objected as soon as he was aware of restitution to Reece's Alleged Victims.

To preserve an argument for appeal, the argument must be raised at the trial court if the party had an opportunity to do so. *United States v. Obasohan*, 73 F.3d

18

309, 310 (11th Cir. 1996). In order to explain how Edwards properly preserved this argument at the earliest opportunity, we first must recount how the procedure in this case deviated from the procedures a court should follow under 18 U.S.C. § 3664.[5] *See* 18 U.S.C. § 3663A(d) (providing that an order for restitution should follow the procedures in 18 U.S.C. § 3664).

Under 18 U.S.C. § 3664, the probation officer should provide the court with information for a restitution order including "a complete accounting of the losses of each victim." 18 U.S.C. § 3664(a). The district court should then disclose relevant portions of this material to both the defendant and the government. 18 U.S.C. § 3664(b). If needed, "the court may require additional documentation or hear testimony." 18 U.S.C. § 3664(d)(4). If a victim's losses are still unascertainable by ten days before sentencing, the government or the probation officer should inform the court. 18 U.S.C. § 3664(d)(5). The court should then set a date for final determination of the victim's losses no later than 90 days after sentencing.[6] 18 U.S.C. § 3664(d)(5). The government bears the burden of demonstrating a victim's loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).

---

[5] This description is provided only to give proper context for our analysis concerning whether the issue was preserved. Edwards does not contend on appeal that the district court erred by deviating from the procedures in 18 U.S.C. § 3664.

[6] Although the statute says that the date for final determination is "not to exceed 90 days after sentencing," the Supreme Court has held that this requirement may be waived in certain situations. *See Dolan v. United States*, 130 S.Ct. 2533, 2537 (2010).

These procedures were not followed in this case as to Reece's Alleged Victims. These alleged victims were not mentioned in the presentence report. In the presentence report, the full $850,000 was proposed as restitution to Reece directly. Consequently, Edwards received no information about these victims with the presentence report information pertaining to restitution. Furthermore, the Government failed to inform the court of the unascertainable losses by ten days before sentencing. Although no communication is in the record, the Government asserts that the decision to transfer restitution from Reece to Reece's Alleged Victims was not communicated to the court until the day before sentencing and was never communicated to Edwards. The Government also admits that it never provided any evidence of Reece's Alleged Victims' losses at sentencing. Because of these procedural mistakes, Edwards first learned of the order requiring restitution to Reece's Alleged Victims when the district court entered the order ninety-one days after the sentencing hearing. Therefore, by objecting to the restitution order, Edwards objected at the earliest possible opportunity.

We reject the Government's argument that Edwards failed to preserve his defense against the transfer of restitution to Reece's Alleged Victims by not objecting to the original proposed restitution to Reece. First, despite the alleged connection between the recipients, this restitution is ordered to different individuals. Second, the Government's transfer theory fails because it begs the

20

question by presupposing, without any evidence, that these individuals actually were Reece's victims. The Government essentially argues that by not objecting to restitution to Reece, Edwards failed to preserve the opportunity to object to a new restitution order to individuals who are not shown by the record to have any connection with Edwards, Reece, or this case generally. Stated this way, the flaw in the Government's preservation argument is readily apparent.

Accordingly, we hold that Edwards preserved this argument for appeal by objecting as soon as this restitution order was received.

Under 18 U.S.C. § 3664(e) the government must prove that an individual is a victim entitled to restitution by a preponderance of the evidence. Because this issue addresses the facts underlying a restitution order, we review the district court's decision for clear error. *Brown*, 665 F.3d at 1252. Since the Government admits that the court had no evidence at the time it ordered restitution to demonstrate that Reece's Alleged Victims were entitled to restitution, we conclude that the Government failed to meet its evidentiary burden and that the district court clearly erred.[7]

---

[7] The Government argues that the court did have evidence that the Caldwells invested with Reece because it mentioned the restitution award in a separate criminal action brought against Reece. However, the court never states that it took judicial notice of that judgment or that the judgment provides sufficient evidence to link Edwards to the Caldwells. Thus, this finding is not explained "with sufficient clarity to enable this court to adequately perform its function on appellate review." *United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010).

Because we hold that the district court erred in ordering restitution to Reece's Alleged Victims, we must determine what remedy is appropriate. Under 28 U.S.C. § 2106, this court has broad discretion to grant relief "as may be just under the circumstances." *See United States v. Matinez*, 606 F.3d 1303, 1304 (11th Cir. 2010) ("28 U.S.C. § 2106 unambiguously grants the circuit courts broad discretion to fashion an appropriate mandate… [i]ndeed, we cannot imagine how the appellate court's discretion could be framed more broadly."). We often require both the defendant and the government to present all evidence and objections at the sentencing hearing. *See United States v. Canty*, 570 F.3d 1251, 1256-57 (11th Cir. 2009).

In light of third parties' interests, however, the correct remedy here is to vacate the order of restitution to Reece's Alleged Victims and remand for a hearing. In this case, we face a situation where not remanding may harm victims who may not have been in court. If we do not remand, these individuals will be denied the possibility of restitution through no fault of their own. Vacating without remand would harm victims though they bear no responsibility for the crime and are the parties the statute seeks to benefit.

Accordingly, we exercise our discretion to vacate the order of restitution to Reece's Alleged Victims and remand the case to the district court for a hearing on

22

whether these individuals are entitled to restitution.[8]  *See generally* 28 U.S.C. §

2106.

## V. CONCLUSION

The convictions and sentences of the Defendants are AFFIRMED.  We

AFFIRM the restitution order generally, but VACATE the restitution order in

respect to the Caldwells, Colovin, Freeman, Perry, and Wilson and REMAND for

a hearing to determine whether they are entitled to restitution.

CONVICTIONS   AND   SENTENCES   AFFIRMED;   RESTITUTION

ORDER AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

---

[8] In its brief, the Government notes that the restitution order contains an arithmetic error that originated in the Government's proposed order.  (Red. Br. at 47-48.)  On remand, the district court should also revise the restitution order to reflect any clerical errors in the Government's arithmetic.  *See* Fed. R. Crim. P. 36 (granting the court the ability to correct a clerical error at any time.); *United States v. Augustin*, 661 F.3d 1105, 1110 n.1 (11th Cir. 2011) ("[W]e may *sua sponte* raise the issue that there is a clerical error in the judgment and remand with instructions that the error be corrected.").

23